[No. 5003.]
[No. 2552 C. A.]

## THE CITY OF DENVER v. SPENCER.

1. **Cities and Towns—Park Commissioners—City Officers.**

   Where the parks of a city are the private and exclusive property of the city, the park commissioners having exclusive management and control of such parks are municipal officers of the city, and not public or state officers, although they were appointed by authority of a special charter enacted by the legislature of the state.

2. **Cities and Towns—Park Commissioners—Record of Meetings —Evidence.**

   Where a city charter directs that the secretary of the park commission shall keep a record of all its proceedings, but does not provide that the acts of the commission shall be void unless such record is kept, or that the record thereof is the sole and exclusive evidence thereof, the acts of such commission may be shown by parol evidence where no record thereof is kept, and where so proven are binding on the city.

3. **Cities and Towns—Park Commissioners—Negligence.**

   A city is liable for the negligence of its park commission in constructing a stand or platform in one of its parks to be occupied by persons for the purpose of furnishing entertainment for the people who resort to such park.

4. **Cities and Towns—Negligence—Presumptive Negligence— Instructions.**

   Negligence cannot be presumed from proof of the mere happening of an accident by the falling of a stand erected in a park of a city by the park commissioners, by which plaintiff was injured, and an instruction that negligence might be presumed from proof of the mere happening of such accident was reversible error.

*Appeal from the District Court of Arapahoe County: Hon. F. T. Johnson, Judge.*

Action for damages for personal injury which plaintiff sustained by the falling of a stand alleged to have been negligently erected by defendant. The material issue of negligence being traversed, trial to a jury resulted in judgment for the plaintiff. Defendant appeals.

At the time of the accident the defendant city existed under a special charter granted by the general assembly. Article III thereof created a park commission composed of three commissioners to be appointed by the mayor. Section 81 of the article says: "The secretary shall keep a record of all the proceedings of the commission." Section 84 reads: "A majority of the members shall constitute a quorum, and no action of the commission shall be binding unless authorized by a majority of the members at a regular or duly called special meeting thereof." Other sections confer upon the park board exclusive management and control of all the parks belonging to the city, and, with the approval of the mayor, exclusive power to expend in behalf of the city, upon the parks, all sums of money that are raised by taxation or otherwise for park purposes.

The complaint alleges that the park commission had control of City Park, one of the parks belonging to the city, and that the same was used as a place of resort and entertainment for its citizens; that the commission had sold privileges to private individuals to sell and serve refreshments in the park, and that, for the purpose of inducing and bringing into the same large numbers of people and thereby enhancing the value of the privileges and indirectly contributing to the city revenues, the commission determined to, and did, erect therein a stand or structure for the seating of a large number of people, and this stand was erected and intended to be occu-

pied by children and others of immature age who were solicited and induced to go upon the same for the purpose of singing and giving a musical entertainment; that the plaintiff, among others, was so induced and invited by the park commission to go upon the stand, and while thereupon it suddenly fell and caused the injury here sued for. The negligence pleaded is improper construction, erection and bracing of the stand.

Mr. H. M. ORAHOOD, Mr. H. L. RITTER and Mr. N. B. BACHTELL, for appellant.

Mr. JOHN H. LEIPER and Mr. RUFUS M. SNAVELY, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court.

1. The city says that, although the park commission has the control and management of its public parks, yet, as they were appointed under the authority of the general assembly, they are not strictly municipal, but public or state officers, and therefore the city is not liable for their negligent acts within the scope of their authority.

This position is not tenable, and the very authorities cited in its support are against it. The special charter was granted to the city by the general assembly, but the duties imposed upon the park commission are exclusively for its benefit, and in no sense for the state or any of its political subdivisions. The parks are the private and exclusive property of the city, in which the state, as distinguished from the municipality, has no property interest whatever. To this proposition no authorities need be cited.

2. The stand or structure was erected in the City Park by and under the direction of the park

commission, so plaintiff says; without any legal authority emanating from the board, as the city asserts. The evidence is that the secretary of the park commission, if that board took any action with reference to erecting the stand, made no record of it. The city's construction of the charter and its contention with respect to this point is that the city can be bound by the action of the park commission only at a regular or special meeting, and that the only evidence of its action thereat is the record which is required to be kept and, when the records are silent, none of its proceedings in a collateral action can be shown by parol proof.

To this proposition probably the strongest case cited is *Morrison v. City of Lawrence,* 98 Mass. 219. There the court said that parol evidence was inadmissible to prove the acts or proceedings of the city council, or that the record of such proceedings, as kept by the clerk, was erroneous or defective. This conclusion, as we understand the opinion, was based upon the proposition that the acts sought to be established by parol proof were lawful only because authority therefor was conferred by statute, and as this authority was strictly limited and the method prescribed exclusive, no obligation could be incurred by or liability imposed upon the city except in pursuance of a vote of two-thirds of the members of each branch of the city council present and voting by yea and nay vote. And as there was an express provision of the same act requiring the city council to keep a record of the whole proceedings, the only evidence of municipal action was the record. Other cases cited to the same proposition are: *School District v. Atherton,* 53 Mass. 105; *Boston Turnpike Co. v. Pomfret,* 20 Conn. 589; *Gilbert v. New Haven,* 40 Conn. 102; *City of Lowell v. Wheelock,* 11 Cushing (Mass.) 391; *City of Louisville v. McKegney,* 7 Bush (Ky.) 651.

Some of these cases, under the local statutes, tend to support the city's contention. Others might be distinguished. No provision of the Denver charter to which our attention is called either expressly or by implication declares that nothing but a recorded vote or written document shall bind the city or be received as evidence. There is a direction that the secretary of the commission shall keep a record of all of its proceedings, but there is no provision that its acts shall be void unless such record is kept, or that the record thereof is the sole and exclusive evidence. Judge Dillon in the first volume of the 4th edition of his valuable work on Municipal Corporations, at section 300 refers to the distinction sometimes drawn between evidence to contradict facts stated on the record and evidence to show facts omitted to be stated. He says that parol evidence of the latter kind is receivable unless the law expressly and imperatively requires all matters to appear of record and makes the record the only evidence. The leading case in support of this view is *Bank v. Dandridge,* 12 Wheat. 64, where, in an elaborate opinion by Mr. Justice Story, the doctrine of the text is laid down. The same principle by the same court was extended to public boards in the case of *U. S. v. Fillebrown,* 7 Pet. 28, where it was held that, since the board of commissioners of the navy hospital fund was not required by law to reduce its proceedings to writing in order to make them binding, oral evidence of such proceedings was competent. The same doctrine is announced in *Langsdale v. Bonton,* 12 Ind. 467; *Indianapolis v. Imberry,* 17 Ind. 175; *Delphi v. Evans,* 36 Ind. 90; and *Troy v. A. & N. R. R. Co.,* 13 Kan. 70.

We find nothing in *Denver v. Burnett,* 9 Colo. App. 531, opposed to Judge Dillon's view. *Tracy v. The People,* 6 Colo. 151; *Brophy v. Hyatt,* 10 Colo.

223, and other similar cases by our own court were based upon a statute held to be mandatory that required, on the passage or adoption of an ordinance, that the yeas and nays should be called and recorded, and unless the record itself as kept by the clerk showed that the yeas and nays were called, the ordinance was invalid. That statute is distinguishable from the charter provisions under consideration. The statute construed contemplated that the vote must be taken in a certain way and record thereof made and that the record shall be the only evidence. The charter provisions involved here contain no such requirements. The secretary of the park commission having failed to make any record whatever of the proceedings of the board which authorized the erection of the stand, we are of opinion that parol proof was admissible to show that such action was had.

We do not think this conclusion is opposed to anything decided in *Morris v. Bank,* 17 Colo. 231, or *Rustin v. M. & M. Tunnel Co.,* 23 Colo. 351-358. In the Rustin case the court did observe that, as a general rule, facts which should be of record cannot be proved by parol, and cited the former case. These were cases construing certain provisions of our revenue law in relation to tax sales. It was held that the written or record evidence referred to was by the statute intended to be exclusive. Here the charter provisions were not so intended.

3. But the city insists that the proof admitted by the trial court is insufficient to show that any action was taken by the commission at a regular or special meeting, or that a majority of the board took such action, or that the same met with the approval of the mayor. Without discussing this evidence in detail, we remark that we are satisfied after carefully reading it that, at a regular meeting of the

board, a majority of the members voted to erect this stand, and its determination to appropriate a certain sum therefor received the approval of the mayor; and the stand was erected in the City Park under the authority thus given. Indeed, there is no conflict as to this point, and the evidence is legally sufficient.

4. That the city is liable for the negligent act, if any, of the park commission in constructing the stand, is fully sustained in principle by our previous decisions (*City of Denver v. Rhodes,* 9 Colo. 554; *City of Denver v. Dunsmore,* 7 Colo. 328; *City of Denver v. Capelli,* 4 Colo. 25), and is in accord with the great weight of authority in this country.— *Barnes v. District of Columbia,* 91 U. S. 540.

5. Having thus determined the city's liability, in case the negligence alleged is established, we must reverse the judgment for prejudicial error of the court in instructing the jury that the mere happening of the accident was presumptive evidence of the negligence charged. In some courts this doctrine is restricted to cases of personal injury by a common carrier to a passenger, while in others it has been, with qualification, extended to cases like the one at bar. This court and our court of appeals are committed to the rule that no presumption of negligence arises from the mere happening of an accident in cases like the one before us.—*City of Greeley v. Foster,* 32 Colo. 292.

Even where the contrary rule exists, it is doubtful if the instruction given by the trial court would be upheld in all of the states. Perhaps it finds strongest support in *Mullen v. St. John,* 57 N. Y. 567. But the rule there applied has frequently been considered by the learned court of appeals of that state, and more than once the intimation, if not the positive ruling, been made that the mere happening of an accident, except when common carriers are charged

with negligent acts affecting passengers, is not *prima facie* evidence of negligence without reference to the attending circumstances.    Thus in *Cosulich v. B. O. Co.,* 122 N. Y. 118, the court, referring to the Mullen case, *supra,* said that "there was far more than the mere happening of the accident which was held to give rise to it [inference of negligence] in that case." And in *Reiss et al. v. N. Y. S. Co.,* 128 N. Y. 103, the court said that the mere fact that the bonnet on the service valve in a pipe was blown off and steam escaped does not furnish sufficient evidence of negligence to cast liability on a defendant charged therewith.

In *Griffen v. Manice,* 166 N. Y. 188, an instruction similar to the one given by the trial court in this case was sustained, but only because there was evidence in the case of attendant circumstances which, in connection with the mere accident, made a *prima facie* case of negligence.    Apparently the court would not have sustained the instruction had there not been proof of attendant circumstances which, in connection with the happening of the accident, tended to establish negligence.    But whatever the rule may be elsewhere, the instruction given in this case is fatal under the Foster case, *supra.*    The refusal to give an instruction tendered by the defendant which contained the direction that the negligence charged cannot be presumed from the mere happening of the accident, without other evidence, accentuated the error.    Such an instruction has often received approval in this jurisdiction.

6.    In the event of a new trial it is appropriate to say that the plaintiff, if so advised, may have leave to amend her complaint so as to state more clearly the grounds of negligence relied on and to include the specification that negligence consisted, in part at least, in choosing an improper place for the struc-

ture. We make this observation because the point is made by the city that the negligence, if any, was not in failing properly to brace the structure, but in selecting the site for its foundation.

For error in giving and refusing the instructions referred to, the judgment must be reversed and the cause remanded for a new trial.    *Reversed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE STEELE concur.