Mr. Chief Justice Pringle
delivered the opinion of the Court.
This writ of error is' brought by Alameda Water & Sanitation District from an adverse jury finding in the *450 trial court. The parties appear here in the reverse order from the trial. Plaintiff in error will be referred to as Alameda, defendant in error as Ridgewood. This is the second time this action has been before us. In the first instance, Alameda’s motion for summary judgment was granted by the trial court and we reversed. Ridgewood Mobile Homes Park, Inc. v. Alameda Water and Sanitation District, 159 Colo. 178, 410 P.2d 641. Trial was subsequently had to the jury resulting in an award of damages for Ridgewood in the amount of $12,773.23 plus costs or breach of contract. We affirm the judgment of the trial court.
The facts in this case are complex, and the parties differ as to the weight and consequence to be given the evidence in the record. It appears that Alva Parmelee and his wife purchased all the stock in the Ridgewood Corporation in April of 1960. It was their intention to construct a mobile home park on the parcel of land owned by Ridgewood. In May of 1960, written application was made to Alameda to furnish sewer service to the proposed trailer park. This application is part of the record. On the reverse side of this application are places for action and approval of the Board of Directors of Alameda (hereinafter referred to as Board). These places have remained blank. There is also a letter signed by one Eggleston, the manager of Alameda, to Mr. Parmelee. It reads:
“TO WHOM IT MAY CONCERN:
“This is' to inform you that sewer service to the Ridge-wood Mobile Home Park, Incorporated is available through the Alameda Water & Sanitation District.”
There is additional evidence in the record indicating that Eggleston informed Parmelee that there were two possible methods of getting service to the property in question. One was a lift station into an existing system, the second was' a proposed new line running close by the property. The lift station would require the approval of Denver since it had the right to reject any of Ala *451 meda’s contracts. The new line was still in the planning stages. Parmelee testified that he was promised he would have service within three to four months by one method or the other. There was also testimony by the President of the Board that the application of Ridgewood was accepted by the Board and that the Board then accepted a deposit of $10,565 from Ridgewood. There was also evidence that this deposit was to cover engineering and construction costs, and tap fees.
Parmelee testified that after he had made the deposit Alameda continued to promise him service but also continued to delay performance of its agreement. When it became apparent to Parmelee that there would be some delay in getting the sewer system started, he installed a septic system which required him to personnally carry the waste to a dumpage point by truck. This septic system took up room that could have otherwise been used by trailers. During this period, Parmelee had contracted with an engineering firm to install the lift system. Once the plans were complete, it was learned that Denver refused to go along with the plan; thus requiring its abandonment. A short time later, Ridge-wood was able to acquire service from another district, after which this suit was brought.
I.
Alameda’s first contention is that as a matter of law no contract existed between the parties because there were no minutes introduced into evidence to show acceptance by the Board. Ridgewood’s original application was placed into evidence. The reverse side of this application had spaces for Board action. These places are blank. During the trial, no minutes could be found showing Board action. The question before us is whether a copy of written minutes is the only way to establish that the Board in fact acted on Ridgewood’s application. The law in this jurisdiction clearly establishes that it is not. Lewis v. People, 99 Colo. 102, 60 P.2d 1089; City of Denver v. Spencer, 34 Colo. 270, 82 P. 590. Minutes of *452 corporate meetings are only prima facie evidence. Parol testimony is proper when necessary to prove what actions actually occurred. Therefore, with or without a formal writing, we hold that it was a jury question whether the Board took the necessary action to authorize the contract.
Alameda also argues that it was error to instruct the jury concerning implied contract. We do not agree that the instruction given was erroneous under the circumstances here. Once Board action was established by parol evidence, the terms and conditions of the contract could properly be implied by the actions and oral statements of the parties. Coulter v. Anderson, 144 Colo. 402, 357 P.2d 76; Greeley and Loveland Irrigation Co. v. McCloughan, 140 Colo. 173, 342 P.2d 1045; Andrews v. Costilla Ditch Co., 114 Colo. 317, 165 P.2d 188.
II.
Alameda contends next that the evidence in the record does not support the findings of the jury in deciding the various matters raised by Alameda. Under this assignment of error, we point out that we are bound by our case law to examine the evidence in the light most favorable to the prevailing party.
Alameda first alleges' that there was insufficient evidence to establish Board action. The record indicates otherwise. One of the members of the Board testified:
“Q. And, as a matter of fact, Mr. Parmelee’s application for service to the Ridgewood property was considered and passed on and granted by the Board of Directors of the District, was it not?
“A. It was accepted, passed on — accepted — I believe that’s right.”
Certainly, this testimony is sufficient to support a jury finding that the Board did act. There was additional evidence that the Board authorized Eggleston’s letter and directed him to accept the deposit.
Alameda’s second contention is' that the evidence which establishes Alameda’s agreement to serve was *453 conditioned on Denver’s approval and that since Denver did not approve the plans the agreement was unenforceable. This argument overlooks Ridgewood’s evidence that the contract was in the alternative, that is, to serve either through the lift system or by the construction of a new line. Since Denver’s approval only concerned itself with the lift system, the failure of Denver to approve that method did not relieve Alameda of the obligation to furnish sewer service by the new line.
A third point raised is that Ridgewood did not furnish the necessary easements to reach the point of entry into the system. Again, the jury could have believed Parmelee’s testimony that Eggleston informed him that he (Eggleston) held the second required easement. Parmelee had the first. Although this testimony is otherwise unsubstantiated, if the jury chose to believe it, we will not substitute our opinion for theirs.
The fourth contention is that since Ridgewood accepted service from another district, they had abandoned any rights they had against Alameda. This is not the case. When the second District was finally in a position to offer service, the damages here awarded had already been incurred. At the time for which damage was claimed, the second district was not yet in a position to offer service.
III.
On the question of damages, it is the position of Alameda that Ridgewood lost nothing by the breach. We disagree. The jury must have accepted as true the proposition that when Ridgewood was forced to operate the septic system while waiting for Alameda to deliver, it lost rental value due to the space the system took up. There was evidence in the record that Parmelee had maintained trailer parks in the area before, and that he had no trouble renting out the remaining spaces on this lot while awaiting performance by Alameda. Thus, we hold that the amount of damages awarded by the jury *454 was reasonable, and that lost rental value Is a proper measure of damages to be considered.
The judgment is affirmed.
Mr. Justice Groves not participating.