536 P.2d 874 (1975)
Catherine C. CORPER et al., Plaintiffs-Appellants,
v.
The CITY AND COUNTY OF DENVER et al., Defendants-Appellees.
No. 74-161.
Colorado Court of Appeals, Div. I.
May 6, 1975.
Rehearing Denied May 28, 1975.
Certiorari Granted July 7, 1975.
*875 Wagner, Wyers & Vanatta, P. C., Harold B. Wagner, Denver, for plaintiffs-appellants.
Max P. Zall, Earl T. Thrasher, Robert M. Kelly, Denver, for defendants-appellees the City and County of Denver and members of the City Council thereof.
Long & Jaudon, P. C., James A. Dierker, Denver, for defendant-appellee The Mount Airy Foundation.
Selected for Official Publication.
*876 KELLY, Judge.
Plaintiffs are residents and landowners near Mount Airy Hospital in Denver. They brought suit against the City and County of Denver, its individual council members, and the Mount Airy Foundation, for relief under C.R.C.P. 106(a)(4), for a declaratory judgment, and for an injunction. The purposes of the action were to set aside a Denver ordinance rezoning property belonging to Mount Airy and to enjoin the issuance of a building permit for construction of a hospital on the rezoned property.
The trial court initially issued an ex parte order to show cause, a temporary restraining order, and an order for certification of the transcript of the rezoning proceedings before the Denver City Council. After hearings on motions by the city and its council members, however, these orders were vacated and the plaintiffs' complaint seeking certiorari relief was dismissed on the ground that the Denver City Council was acting in a legislative capacity in adopting the rezoning ordinance and that, therefore, its proceedings were not subject to review under C.R.C.P. 106(a)(4). There was no judgment entered after this dismissal under the provisions of C.R.C.P. 54(b); thus no appeal could be taken until final disposition of the case.
After the filing of responsive pleadings, trial was to the court on plaintiffs' claims for declaratory and injunctive relief. The trial court entered judgment for defendants and dismissed the complaint. We affirm in part and reverse in part.
The underlying facts are not in dispute. Denver's comprehensive zoning ordinance was amended in 1967 to authorize the use of property zoned R-5 for institutions. In July 1972, Mount Airy Foundation filed an application for rezoning of a number of lots and parts of lots on and near Clermont Street in Denver from R-1 and R-3 to R-5. The R-1 lots were being used by Mount Airy as a non-conforming use. The use of the R-3 lots for hospital purposes was conforming.
The application alleged changing conditions in the area, and stated that Mount Airy was planning "to construct a threestory addition immediately north of and attached to its existing hospital facility." The application further stated that Mount Airy was "seeking an R-5 zone to insure the institutional use of the property. . . and also to protect the surrounding residental [sic] area from continued multi-family, high-rise apartment development."
After the filing of this application, the property was posted for hearing on September 18, 1972. A number of protestants appeared at this hearing, and as a result, the city council took no action on the matter. Instead, it was suggested to the plaintiffs that they attempt to resolve their differences with Mount Airy.
There were several conferences between the parties and additional hearings before the city council, after which Mount Airy directed a letter dated October 16, 1972, to the Denver Department of Zoning Administration. In this letter, Mount Airy requested an amendment of the legal description on its application reducing the area for which rezoning was sought. The property was again posted for hearing on December 26, 1972, and after the hearing, the amendment was approved and the ordinance enacted. This lawsuit followed.
The trial court ruled against the plaintiffs on every material allegation of their complaint and plaintiffs assert the error of each of these rulings as a ground for reversal. In addition, plaintiffs contend that the trial court erred in dismissing their complaint for relief under C.R.C.P. 106(a)(4). We agree that plaintiffs were entitled to review in the nature of certiorari and we therefore reverse on that ground alone. In all other respects, the judgment of the trial court is affirmed.

I. Relief in the Nature of Certiorari
In connection with their argument that the trial court should have granted review *877 under C.R.C.P. 106(a)(4), plaintiffs contend that the court erred in admitting evidence outside the record of proceedings before the city council. We need not consider this contention, since the trial court did not hear the case as a Rule 106 action and was not limited in its admission of evidence by the restrictive rule applicable to certiorari review. See City of Colorado Springs v. District Court, Colo., 519 P.2d 325; Dillon Companies, Inc. v. City of Boulder, Colo., 515 P.2d 627; C.R.C.P. 106(a)(4).
Plaintiffs' argument that the trial court should have granted review in the nature of certiorari is predicated on the allegedly quasi-judicial nature of Denver's rezoning procedures, which plaintiffs assert are reviewable under C.R.C.P. 106(a)(4). The city and Mount Airy, on the other hand, contend that in Denver, the rezoning function is legislative in character and is, therefore, not susceptible to judicial scrutiny by way of certiorari.
Many of the Colorado cases decided a decade or more ago appear to support the position of the city and Mount Airy that the enactment of zoning ordinances is a legislative function. See, e. g., Orth v. Board of County Commissioners, 158 Colo. 540, 408 P.2d 974; Huneke v. Glaspy, 155 Colo. 593, 396 P.2d 453; Frankel v. Denver, 147 Colo. 373, 363 P.2d 1063; Baum v. Denver, 147 Colo. 104, 363 P.2d 688. In more recent cases, however, rezoning procedures have been reviewed under C.R.C.P. 106(a)(4) as quasi-judicial activities. See, e. g., City of Colorado Springs v. District Court, supra; Dillon Companies, Inc. v. City of Boulder, supra; Ford Leasing Development Co. v. Board of County Commissioners, Colo., 528 P.2d 237; Board of County Commissioners v. Simmons, 177 Colo. 347, 494 P.2d 85.
The apparent conflict in the Colorado cases is largely superficial and arises out of the varying procedures employed and the kinds of relief sought by the litigants. See Englewood v. Daily, 158 Colo. 356, 407 P.2d 325; Kizer v. Beck, 30 Colo.App. 569, 496 P.2d 1062. We have not been directed to any Colorado authority, nor have we found any, which treats the problem in the present procedural posture. The principle to be gleaned from careful analysis of the Colorado cases, however, has been expressly stated in Fasano v. Board of County Commissioners, 264 Or. 574, 507 P.2d 23, 26, in which the Oregon Supreme Court said:
"Ordinances laying down general policies without regard to a specific piece of property are usually an exercise of legislative authority, are subject to limited review, and may only be attacked upon constitutional grounds for an arbitrary abuse of authority. On the other hand, a determination whether the permissible use of a specific piece of property should be changed is usually an exercise of judicial authority and its propriety is subject to an altogether different test."
The reasons for the distinction are compellingly stated in Fleming v. City of Tacoma, 81 Wash.2d 292, 502 P.2d 327, in which the court said:
"Generally, when a municipal legislative body enacts a comprehensive plan and zoning code it acts in a policy making capacity. But in amending a zoning code, or reclassifying land thereunder, the same body, in effect, makes an adjudication between the rights sought by the proponents and those claimed by the opponents of the zoning change. The parties whose interests are affected are readily identifiable. Although important questions of public policy may permeate a zoning amendment, the decision has a far greater impact on one group of citizens than on the public generally.
"Another feature of zoning amendment decisions, which distinguishes them from other types of legislative action, is their localized applicability. Other municipal ordinances which affect particular groups or individuals more than the public at large apply throughout an entire geographic area within the municipal jurisdiction, whereas ordinances that *878 amend zoning codes or reclassify land thereunder apply only to the immediate area being rezoned.
"Finally, legislative hearings are generally discretionary with the body conducting them, whereas zoning hearings are required by statute, charter, or ordinance. The fact that these hearings are required is itself recognition of the fact that the decision making process must be more sensitive to the rights of the individual citizen involved."
While the Colorado cases do not explicitly state this distinction between a comprehensive zoning ordinance as a legislative enactment and a rezoning amendment as an adjudicative process, when viewed in this light, our cases become harmonious and are in accord with the modern trend in zoning law. See West v. City of Portage, 392 Mich. 458, 221 N.W.2d 203; Fasano v. Board of County Commissioners, supra; Fleming v. City of Tacoma, supra; Comment, Zoning AmendmentsThe Product of Judicial or Quasi-Judicial Actions, 33 Ohio St.L.J. 130; Freilich, Fasano v. Board of County Commissioners of Washington County: Is Rezoning an Administrative or Legislative Function?, 6 Urban Lawyer vii (1974). The more recent Colorado cases, emphasizing the distinctively quasi-judicial character of the rezoning function and the propriety of C.R.C.P. 106(a)(4) review, indicate Colorado's preference for the more progressive view. See, e. g., Board of County Commissioners v. Simmons, supra; and cf. Sundance Hills Homeowners Association v. Board of County Commissioners, Colo., 534 P.2d 1212, announced April 28, 1975. The distinction also finds support in the oft-repeated rule in our cases that Rule 106 relief is not an exclusive remedy, declaratory judgment being available to obtain review of matters not reviewable by certiorari. See Ford Leasing Development Co. v. Board of County Commissioners, supra; Morris v. Board of County Commissioners, 150 Colo. 33, 370 P.2d 438; Regennitter v. Fowler, 132 Colo. 489, 290 P. 2d 223.
Applying the rule here, it becomes plain that the trial court erred in denying plaintiffs' request for review of the city's actions under C.R.C.P. 106(a)(4). Plaintiffs' other claims, however, were properly within the scope of review in their action for declaratory judgment and for an injunction, and were properly heard by the trial court in this context. The allegations of error in those proceedings require our further consideration.

II. Rulings on the Comprehensive Zoning Ordinance
Plaintiffs assert that the trial court erred in its interpretation and application of Denver's comprehensive zoning ordinance. In addition, plaintiffs argue that the testimony considered by the trial court which supported its conclusions was inadmissible. All of these rulings of the trial court involved both questions of law and questions of fact and insofar as the fact findings are based on admissible evidence, we are bound by the trial court's resolution of them. Linley v. Hanson, 173 Colo. 239, 477 P.2d 453.
Plaintiffs first contend that Mount Airy's October 16 letter was a new application which did not comply with the requirements of the comprehensive zoning ordinance in that it failed to state the nature, expected effect and legal basis for its proposed zoning amendment. The Denver Zoning Ordinance plainly requires such statements in support of an original application.
The trial court found that the October 16 letter was an amendment to the original application of July 1972, which contained the requisite supportive allegations for the zoning change. This finding was based on the uncontroverted testimony of city administrative officials that letter amendments to zoning applications are a standard practice and are treated by city officials as amendments, not as new applications.
*879 Plaintiffs' argument that this testimony was inadmissible to vary, amend or supplement the record of the rezoning proceedings of the city council is without merit. See Alameda Water & Sanitation District v. Ridgewood Mobile Homes Park, Inc., 173 Colo. 447, 480 P.2d 545; Lewis v. People, 99 Colo. 102, 60 P.2d 1089; Denver v. Spencer, 34 Colo. 270, 82 P. 590. The trial court's finding on this issue, being supported by the evidence, is binding on review. Linley v. Hanson, supra.
Plaintiffs also argue that the necessary recommendations of city agencies were not obtained prior to adoption of the rezoning amendment. The trial court ruled, as a matter of law, that Sections 618.2-1, 618.4-1 and 618.5-1 of the Denver Zoning Ordinance requiring submission of proposed amendments to affected city agencies for their recommendations are permissive, not mandatory. This conclusion was based on the plain language of the cited sections and was manifestly correct.
It was uncontroverted that Mount Airy's application had been forwarded to the Planning Office, as required by Section 618.4-1, and then to the other affected agencies. The trial court found that the failure of these agencies to make recommendations concerning the application was not fatal and that the zoning ordinance requirements had been met. We agree.
Plaintiffs assert that the trial court erred in ruling that Denver's R-5 zoning classification includes hospitals as a use by right. The R-5 classification explicitly covers "institutions." Denver's zoning administrator testified that the R-5 classification, at the time of its adoption by the Denver city council in 1967, was intended to cover all establishments providing health care and residence for the young or aged, including hospitals, and has since been so interpreted and applied by the Denver zoning department and the city council.
Plaintiffs again contend that this testimony was inadmissible parol evidence. We disagree. See Alameda Water & Sanitation District v. Ridgewood Mobile Homes Park, Inc., supra; Lewis v. People, supra; Denver v. Spencer, supra. In interpreting a zoning ordinance, the trial court may consider the contemporaneous construction of that ordinance by the public officials charged with its administration. See Davis v. Conour, 178 Colo. 376, 497 P.2d 1015. Moreover, evidence of the legislative intent in adopting the R-5 zoning classification was particularly relevant to the issue plaintiffs raised. See Johnston v. City Council, 177 Colo. 223, 493 P.2d 651; People v. Texas Co., 85 Colo. 289, 275 P. 896. The testimony was sufficient to support the trial court's finding concerning the scope of the R-5 classification. Linley v. Hanson, supra.
Plaintiffs' argument that Mount Airy abandoned its nonconforming R-1 use of its property by applying for the R-5 classification is without foundation in the record. Section 617.1-4 of the Denver Zoning Ordinance sets forth the standards to be applied in determining abandonment and termination of non-conforming uses. The actions taken by Mount Airy in applying for R-5 classification are not included within the terms of this section. While there is no immutable rule as to what constitutes sufficient evidence of abandonment, there must be some showing of intent to abandon. See Service Oil Co. v. Rhodus, 179 Colo. 335, 500 P.2d 807. Here, there was no evidence of intent to abandon.

III. Changed Conditions and Spot Zoning
Plaintiffs argue that there was no evidence of changed or changing conditions in the neighborhood. Therefore, they assert, the rezoning amendment was "spot zoning", and the trial court's rulings to the contrary were error. We do not agree.
The test of spot zoning is whether the rezoning amendment was for the purpose *880 of furthering the comprehensive zoning plan or was designed to relieve a particular property owner of zoning restrictions. See Clark v. Boulder, 146 Colo. 526, 362 P.2d 160. There is testimony in the trial court record that the character of the neighborhood had been changing over a period of time from single family and duplex dwellings to apartment buildings; that traffic congestion had increased markedly; that Mount Airy's buildings were deteriorating to the point where it would no longer be able to provide medical services to its patients and to the community at large, and was in danger of losing its accreditation; and that there had been expansion of other hospitals in an area not far removed from the Mount Airy institution.
This evidence, which was presented to the trial court in the declaratory judgment action, was sufficient to support its finding that the rezoning was not spot zoning. Although the trial court also made a finding that there was evidence of changed or changing conditions before the city council sufficient to warrant the zoning change, we are unable to determine from the record before the trial court whether that finding was correct, the record before the city council not having been certified to the trial court for review. Therefore, the question whether there was evidence before Denver city council to justify the zoning change must be determined by the trial court on remand for review under C.R.C.P. 106(a)(4). See United States v. Smith, 154 Colo. 209, 389 P.2d 409.

IV. Injunctive Relief
Plaintiffs maintain that they are entitled to injunctive relief prohibiting the issuance of a building permit to Mount Airy. The record shows that Mount Airy has not applied for a building permit. Moreover, the Denver City Charter provides administrative remedies to be followed by aggrieved persons in cases such as this.
Where administrative remedies are provided, they must be exhausted before judicial relief is sought. See Denver-Laramie-Walden Truck Line, Inc. v. Denver-Fort Collins Freight Service, Inc., 156 Colo. 366, 399 P.2d 242; Heron v. Denver, 131 Colo. 501, 283 P.2d 647. Plaintiffs' claim for injunctive relief is premature.
The judgment is affirmed in part, reversed in part, and the cause is remanded to the trial court with directions to reinstate plaintiffs' complaint for relief under C.R.C.P. 106(a)(4) and for further proceedings as set forth in sections I and III of this opinion.
COYTE, J., concurs.
BERMAN, J., dissents.