## No. 17,419.

BOARD OF ADJUSTMENT OF THE CITY AND COUNTY OF DENVER, ET AL. *v.* ABE PERLMUTTER CONSTRUCTION COMPANY, ET AL.

(280 P. [2d] 1107)

Decided March 7, 1955.

Mr. John C. Banks, Mr. Earl T. Thrasher, for plaintiffs in error.

Mr. Donald F. Clifford, Mr. Henry E. Zarlengo, Messrs. Donaldson, Hoffman & Goldstein, for defendants in error.

*En Banc.*

Mr. Justice Holland delivered the opinion of the Court.

The Board of Adjustment of the City and County of Denver and its individual members, together with the Chief Building Inspector, bring this cause here to review a judgment of the district court which reversed a decision of the Board of Adjustment involving a building permit for the erection of structures for a proposed shopping center on property owned by defendants in error, who will herein be designated as petitioners. The land involved is a square area in Northeast Denver, lying between Dahlia and Elm streets and East 33rd and East 25th avenues. The property has not been subdivided and there are no interior streets. The west half of the southwest quarter of this area is zoned as business "A". The east half of the southwest quarter, the southeast quarter and the north half of the area, being all of the remainder, is zoned as residence "B". The entire south half of the area was admittedly subject to a nonconforming use as a brickyard, which had been in operation for many years in the mining of clay and the manufacture of brick. Petitioners had mined clay on the north half of the area, but had not manufactured brick thereon. Due to these circumstances, petitioners contended, and now contend, that the north half of the area was subject to a nonconform-

ing use, which is denied by the zoning board, respondents.

December 10, 1953, petitioners, on application, received from the building inspector a permit to erect structures for a proposed shopping center in the area. The application referred to the structures with specific designation and the specifications therefor were to be submitted later. Some of the structural units were to be located on part of the south half of the area and the others on the north half. The south half admittedly being under a nonconforming use, unless the right to such use had been lost by a discontinuance for a period of six months, as found by the board of adjustment. It is conceded that unless the right was so lost, petitioners had a clear right to the use of the south half of the area for the purpose authorized in the building permit. The application for the permit was supported by an affidavit of one of the owners of the area to the effect that the land had been used for the purpose of mining clay and the manufacture and sale of brick continuously since 1909, and that such use was contrary to, and not in conformity with, the zoning ordinance adopted February 11, 1925; that during the period of operations more than 25,000,000 brick had been manufactured on the premises and there still remained 50,000 cubic yards of high quality clay suitable and available for the continued manufacture of brick; that there is a building on the premises housing the offices used for the operation, and a watchman was maintained on the premises through July 1953, until his death; that clay mined on the premises was stockpiled on the north half here involved; that in March of 1953, in addition to the nonconforming use enjoyed under the ordinance, preparations were begun for use as a shopping and business center; that in September, 1953, the back fill of many of the clay pits was completed; that meetings were held with the city officials and plats of the proposal were submitted to the various city departments for their approval; that in the early spring of

1953, deeds to the streets surrounding said premises were delivered to the city engineer; and that curbs and walks were installed in conformity with the traffic plan tentatively approved by the city for a shopping center.

The building permit was issued on the strength of this affidavit to the effect that the entire area was subject to a nonconforming use. On December 14, 1953, the building inspector revoked the permit, "for the reason that the north half of the proposed development had been held by the Supreme Court in 1925 to be amenable to the requirements of the zoning ordinance." *Colby v. Board of Adjustment,* 81 Colo. 344, 255 Pac. 443. Petitioners appealed to the board of adjustment, which sustained the building inspector, and in addition found that all nonconforming uses of the area had been discontinued for a period of six or more months prior to the issuance of the building permit on December 10, 1953, and by reason thereof, petitioners had lost the right to operate a nonconforming use on any part of the area.

In January of 1954, petitioners filed their petition for writ of review in the nature of certiorari in the district court and obtained an order and citation against respondents to show cause. After proper proceedings, the matter was tried to the court on March 3. No testimony was introduced; however, it was stipulated that the entire zoning ordinance of the City and County of Denver, or the pertinent parts thereof, be considered as having been offered and received in evidence, and after arguments of counsel the court took the matter under advisement. On the 8th day of March, the court entered its order, judgment and decree, vacating the order of the board of adjustment and the order of the building inspector, which purported to cancel the building permit hereinbefore referred to, and ordered that the building permit as originally issued be reinstated. As basis for the court's judgment and decree, it determined that the conclusion reached by the board, as expressed, "That the board finds after due consideration of the facts pertain-

ing to the subject case, that the present use of the premises is not a nonconforming industrial zone use; that said use has been discontinued for a period of more than six months prior to the date of the issuance of the building permit by the chief building inspector on December 10, 1953 * * *" is unsupported by the facts contained in the record and by the findings of the board; and further, that the petitioners have not discontinued or abandoned their right to a nonconforming use, and that during all the times material to this action the lands and premises were in a transitional stage from an industrial "A" district nonconforming use to a business "A" district nonconforming use as authorized by section 612.5-1, of the Revised Municipal Code of the City and County of Denver. Motion for new trial was dispensed with and to review the cause a writ of error was issued by this Court in due course.

Respondents, plaintiffs in error, summarize their argument for reversal as follows: That the proceedings in the trial court were covered by rule 106 (a) (4) R.C.P. Colo., and by reason thereof the trial court was limited in its review to a determination of whether or not the board of adjustment had exceeded its jurisdiction or had abused its discretion; that if the decision of the board of adjustment was based on a matter of fact, the trial court was bound thereby; and if based on a question of law, the board applied the law properly; that the judgment of the trial court is contrary to the law; and that the trial court erred in substituting its judgment for the decision of the board of adjustment.

Counsel for petitioners, defendants in error, contend that an application for zoning approval, as made here, was unnecessary because of the ordinance provision giving petitioners a right to change from a long existing nonconforming use to a more restrictive use. They further contend that the board was in error in deciding that nonconforming rights had been destroyed for more than six months prior to December 10, 1953, the date of the

building permit that was issued, because the evidence and the finding of the board do not sustain or support this conclusion; and finally, that December 10, 1953, was not the proper date from which any period or cutoff or abandonment could be calculated, since during the six-months period determined by the board would have been a period in which no conforming use was made of the property, and the decision is absolutely arbitrary in face of the fact that the property owners during that period were dealing with the City in an effort to comply with the ordinance by upgrading their property toward a closer conformity, and they should not be denied due process of law in this undertaking. The record discloses that lawful business use of the property was established as early as April 30, 1953, when the owners took steps to obtain approval for such use; and the physical character of the property was changed by consent of the owners and the City to make it suitable for the intended use. Deeds were delivered to the City for wide streets; curbing was installed by the City expressly for business use; the granting of easements for utility purposes; filling of the pits after the removal of clay by the mining operation; and the maintaining of a watchman on the premises.

The City participated in the consented use of the property by using the mining pits as a refuse dump and making sanitary fills with matter brought from other locations. This had been going on for many years.

The Board made no determination of the exact date, if any, that the industrial use had been discontinued. It is undisputed that in the early summer of 1953 stockpiling of clay on the north portion of the area had taken place. On March 13, 1953, petitioners presented their proposition and disclosed their intentions to the City Planning Officials, and at that time the brick and clay activities were still going on. The plans were presented to all proper city departments and approved. If the period of transition of one use to a more restricted use

was going on during the summer of 1953, that was sufficient within itself; however, the position of petitioners is fortified by the fact that actual operations in the nonconforming use were taking place during this period. A watchman was maintained in July; in September the backfill process was completed and the pits restored to grade; and there was no period prior to September when this regular filling process had been halted.

■ We mention some of the highlights of the evidence which gives full support to the finding of the trial court that there was no abandonment or discontinuation of the nonconforming use. These material facts stood out so clearly that the trial court could not escape notice, and it gave proper consideration to this evidence, as necessarily had to be done, to determine whether the Board had exceeded its jurisdiction or abused its discretion, and it was not a substitute for the decision of the Board of Adjustment. The trial court's finding was a clear determination of matters that the Board apparently failed to consider or arbitrarily refused to give full effect.

■ It having been clearly established, and so found by the trial court that the admitted nonconforming use had not been discontinued or abandoned, the situation presents a clear case for application of pertinent parts of the zoning ordinance, being a part of section 612.5-1 of the Revised Municipal Code dealing with nonconforming uses, which is as follows:

"* * * and such nonconforming use shall not be changed unless changed to a more restrictive use."

This provision of the ordinance preserves nonconforming rights to the use of the land during a period of six months following a discontinuation, since zoning ordinances generally terminate such rights immediately upon discontinuance. This six-months period is allowed for a change of intention as to the use of the property, and there is no restriction therein which prevents a property owner from making a change to a more restrictive nonconforming use without consent or approval of the zon-

ing board. How an owner makes use of the six-months period is for his determination. If he wants to change to a more restrictive use, that is one thing, and if not, he can resume the old use, because he has not lost the right to do so. This is a wise provision in the ordinance, because it encourages the owner to change to a less undesirable use of the property and is in keeping with the policy of such nonconforming zoning ordinances and designed to gradually eliminate such nonconforming uses entirely.

Tersely stated, the ordinance prohibits a change in the nonconforming use with one exception, "unless changed to a more restrictive use."

Regardless of the method here pursued by petitioners in attempting to procure an unnecessary approval of the zoning board, the board exceeded its jurisdiction in entering an order denying the petitioners the right to make the change to a more restrictive use. The function of the board is limited to the consideration of applications and exceptions and variances considered on appeals from decisions of the building inspector. Where a building permit is sought to substitute a more restrictive use for nonconforming property, the inspector and the board are without jurisdiction to deny the permit. The more restrictive use is authorized and given as a right to the property owner by the very terms of the ordinance hereinabove quoted. If the board's approval was not required, then its interference was beyond its jurisdiction.

The activities of the owners here negative any intent to discontinue the use of the property, and, in fact, the nonconforming use was being made during the overlapping period when petitioners had taken positive steps to institute a new and different and more restrictive use of the property, and therefore the law will not permit the property owner to be penalized under such circumstances by extinguishing all of his nonconformity rights

as was done by the board in the matter before us. Cases are legion that support this conclusion.

The district court was correct in its application of the law to the facts presented, and the record fully supports its judgment, which accordingly is affirmed.

Mr. Justice Lindsley did not participate in the consideration of this case.