## No. 21120.

R. M. McMillin *v*. The State of Colorado, et al.

(405 P.2d 672)

Decided September 13, 1965.

SHELDON and NORDMARK, RICHARD C. MCLEAN, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, CLIFTON A. FLOWERS, Assistant, for defendants in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

PLAINTIFF in error will be referred to as defendant or McMillin, and defendants in error will be referred to collectively as the State.

This controversy arises out of the Colorado "grasshopper crisis" of 1958 and the statute concerning it which was passed by the state legislature. The statute in question is Chapter 3, Session Laws of Colorado, 1958, First Extraordinary Session.

This writ of error follows a jury verdict against McMillin in the amount of $2,259.62, which represents defendant's part of the cost of the State's action in spraying certain of his lands for grasshoppers against his will.

The case has been before this court previously. In *State of Colorado v. McMillin,* 150 Colo. 23, 370 P.2d 435 (1962), this court held that the statute in question was constitutional on its face; and even though it had expired by its own terms previous to the bringing of suit by the State, the State could still institute an action to collect money from a defendant under Section 8 of the Act.

On remand to the district court a trial was had on the merits. In his Answer, the defendant admitted that he owned the land in question; that it was sprayed; and that he had refused to consent to the State's action or pay the proportionate cost of such spraying operations.

Though McMillin urges five grounds for reversal of the judgment, we need only consider one that is determinative of the principal issue involved; stated succinctly it is:

Did the Board of County Commissioners carry out all the mandatory requirements of the Act so that liability without consent could be imposed on McMillin?

A review of the record shows that the above question must be answered in the negative.

Section 8 of the Act requires that:

"Whenever the property of any person has been declared a *hazard* to the welfare of the surrounding community or the county or the state by the board of county commissioners, and the owner or occupant has refused to participate in cooperative action by the community or county or state and action has been taken under the

provisions of Section 6, then the state, through its appropriate agency or agencies, shall make demand upon any such owner or occupant for his proportionate share of the costs of work performed, and upon his failure to pay said proportionate share of the costs the state shall commence action in any court of competent jurisdiction for the recovery of said costs from such owner or occupant." (Emphasis supplied.)

The statute also provides in other sections that it was enacted under the police powers of the State (Section 1); that it relates to assistance needed as a result of "major disasters" (Sections 2 and 3); and it sets forth how a determination is made that a *disaster* has occurred (Section 4). Under the enactment, emergency measures could be taken and certain priorities could be granted in giving assistance along with other necessary provisions of implementation.

██ An examination of the statute further discloses that one phase of its operation was the determination of an existing *disaster* and how relief was to be afforded; and, a second separate phase relates to how costs not voluntarily paid under Section 7 may be collected from non-cooperating landowners. The latter, under Section 8 *supra,* clearly and unambiguously required a *declaration by the board of county commissioners* that McMillin's land was a *hazard* to the welfare of the surrounding community, county or state.

In an obvious attempt to meet the requirement of Section 8, the complaint itself alleged that the board of county commissioners had declared defendant's land "to be a hazard to the welfare of the County of Prowers." In addition, Instruction No. 1 told the jury that the Board of county commissioners had "declared the defendant's land among other property in said County to be a hazard to the County of Prowers, as a result of a severe infestation of grasshoppers thereon; * * *."

The record discloses that Exhibit A, offered by the State and admitted into evidence, is the only official

document evidencing written action taken by the board pertaining to the problem. This Exhibit is a copy of the Commissioners' Minutes dated June 24, 1958, and states in pertinent part:

"Pursuant to Section 4, House Bill No. 1, 1958 Special Session, notice is hereby given:

1. That a disaster has occurred in Prowers County, Colorado.

2. That the disaster consists of a grasshopper infestation.

3. That the area affected is the whole of Prowers County, Colorado.

4. That private facilities and funds and state, federal and local governmental facilities, other than those provided by said House Bill No. 1 are unavailable or inadequate.

5. Request is hereby made that the governor determine that a disaster exists in such area, and that the measures provided by said House Bill No. 1 be taken as expeditiously as possible."

Though a general declaration of a disaster as above meets the statutory requirement under Section 4, it does not meet the requirement of declaring a hazard under Section 8 relating to a specific owner's land. Obviously the board of county commissioners did not carry out all the mandatory requirements of the Act by its single declaration so that liability without consent could be imposed on this defendant.

 It is well to keep certain fundamental rules in mind here. For example, a statute that is clear and unambiguous is not subject to interpretation. Such an act is held to mean what it clearly says. *Andrews v. Lull,* 139 Colo. 536, 541, 341 P.2d 475 (1959); *Montrose v. Niles,* 124 Colo. 535, 542, 238 P.2d 875 (1951); *Isaak v. Perry,* 118 Colo. 93, 95, 193 P.2d 269 (1948); *People v. Mooney,* 87 Colo. 567, 571, 290 Pac. 271 (1930); 50 Am. Jur., *Statutes,* § 227. Then, too, since this is a police power statute in derogation of the common law per-

taining to vested rights of an owner of property to the exclusive and unimpaired possession and use of his land, it must be strictly construed in favor of the person against whom its provisions are sought to be applied. *Mooney, supra; Denver v. Denver Buick,* 141 Colo. 121, 129, 347, P.2d 919 (1959); *Stowell v. People,* 104 Colo. 255, 258, 90 P.2d 520 (1939); 50 Am. Jur., *Statutes,* §§ 400 and 402. Also, in "the interpretation of a statute, the legislature will be presumed to have inserted every part thereof for a purpose, and to have intended that every part of a statute should be carried into effect." 50 Am. Jur., *Statutes,* § 358. In *City and County of Denver v. Taylor,* 88 Colo. 89, 94, 292 Pac. 594 (1930), it is well stated that:

"We are required, under another well known and universally recognized rule of construction, in ascertaining the intent of a legislative body, and the meaning of its enactments, to give effect to every word, phrase, clause, sentence and section, if it can be done, and we are not to presume that the legislative body used the language idly and with no intent that meaning should be given to its language."

■■ In our view, Section 8 is plain and explicit; it must be read as written and each part of it must be given effect in conjunction with the balance of the statute. To hold as the State argues would defeat and ignore the requirements of a declaration of a hazard in this section as well as the applicable rules of construction appertaining thereto. Here the statute expressly required the board of county commissioners to declare McMillin's property to be a hazard to the welfare of the surrounding community, county or state before he, as an unwilling person, could be required to pay his proportionate share of the work performed. The requisite procedure was not followed; accordingly, we hold that no liability can legally attach.

The judgment is reversed and the complaint ordered dismissed.