505 P.2d 44 (1972)
CITY AND COUNTY OF DENVER, a municipal corporation, and Anthony H. Jansen, or his successor in office, Zoning Administrator of the City and County of Denver, Plaintiffs-Appellants,
v.
BOARD OF ADJUSTMENT OF the CITY AND COUNTY OF DENVER et al., Defendants-Appellees.
No. 72-048.
Colorado Court of Appeals, Div. II.
October 3, 1972.
Rehearing Denied October 25, 1972.
Certiorari Denied December 18, 1972.
*45 Max P. Zall, Earl T. Thrasher, Robert M. Kelly, Denver, for plaintiffs-appellants.
Hoffman, Goldstein & Armour, P.C., Abe L. Hoffman, Gilbert Goldstein, Denver, for defendants-appellees Henry Bruggenthies, Shirley Bruggenthies, Louis B. Bruggenthies, Francis B. Bruggenthies and Marie Bruggenthies.
Selected for Official Publication.
ENOCH, Judge.
This appeal concerns the provisions of the zoning ordinance of the City and County of Denver relative to non-conforming uses and structures.
The City and County of Denver and its zoning administrator, plaintiffs-appellants, initiated this action in the Denver District Court pursuant to C.R.C.P. 106(a)(4), to review a decision of the Board of Adjustment. The appellants bring this appeal from a judgment of the court affirming the board's decision. For reasons stated hereinafter we reverse that judgment.
The facts are not in dispute. For approximately fifty years, members of the Bruggenthies family, defendants-appellees, have owned a five-acre tract of land on which they have conducted a commercial greenhouse business. The owners have maintained seventeen various structures or buildings on the premises related to the operation of this business. Prior to annexation by the City and County of Denver, the business use of the property was in conformity with the Arapahoe County zoning resolutions. At all times since annexation by the city the property has been and is classified under the city zoning ordinances as part of an area zoned R-1 (residential district). Under provisions of the ordinance, the structures on the property and the use made of the property are classed as non-conforming on an R-1 zone, but have been allowed to continue as such under the provisions of section 617.1-2 of the municipal ordinance.
On September 2, 1970, the owners applied to the Denver Department of Zoning Administration for a permit to raze the structures housing their operation and to erect a multiple unit dwelling. The department denied the application on the ground that it was prohibited by the municipal zoning ordinance, and appeal was taken to the Board of Adjustment. The board determined that the Bruggenthies had been wrongfully denied the permit to change their non-conforming industrial use to a non-conforming residential use and granted the permit. It is this decision of the board which was affirmed by the district court and is the subject of this appeal.

I.
Before considering the merits of this appeal, there are two procedural issues which have been raised by the appellees which must be determined. Appellees assert that the city and the zoning administrator are not proper parties to bring this appeal. We do not agree.
The zoning ordinance of the City and County of Denver, as a comprehensive piece of legislation, creates and defines zoning classifications and provides a system for administering its provisions. Denver Revised Municipal Code 610, et seq. The Department of Zoning Administration was established pursuant to section 611.5 of that ordinance. That section gives the department the power to intervene in decisions of the Board of Adjustment and to have those decisions reviewed "in a court of proper jurisdiction." Section 611.6-6(1) of the same ordinance provides for review of board decisions initiated by "[A]ny person aggrieved, any taxpayer, the municipality or any officer or department of the municipality," as provided by the rules of civil procedure. Thus, the city and the zoning administrator are proper parties to bring this matter before the district court under C.R.C.P. 106, and ultimately before this court.
We also find no merit in appellees' contention that appellants' notice of appeal *46 was not timely filed. Their contention is that since the hearing before the trial court did not involve controverted issues of fact, a motion for new trial is not, under C.R.C.P. 59(h), a prerequisite to appeal, that the appellants' filing of such motion was superfluous and, therefore, could not have extended the time for filing a notice of appeal beyond thirty days following the entry of judgment by the trial court as required by C.A.R. 4.
The trial judge specifically granted appellants twenty days in which to file a motion for new trial. Within that time, the appellants filed such a motion in conjunction with a motion to alter or amend judgment. The notice of appeal was filed two days following the judge's final ruling on that motion, which was, however, more than thirty days from the date of the judgment on the merits.
The trial judge's extension of the time for filing the motion for new trial, from ten to twenty days, was within his discretion under C.R.C.P. 59(b). C.R.C.P. 59(f) makes the filing of a motion for new trial a condition precedent to obtaining review in all cases except as provided in section (h) of that rule. C.R.C.P. 59(h) does not preclude the filing of the motion under the circumstances specified therein. Rather, its language is permissive, saying that an appeal "may" be taken without the necessity of filing the motion. Here, the appellants' filing of such motion with the judge's approval, even if obviated by C.R.C.P. 59(h), had the same effect in extending the time for filing the notice of appeal as would a required filing of a motion under C.R.C.P. 59(f).

II.
The decisive question of substantive law raised by appellants is whether appellees have the right to change an existing, non-conforming use and structure to a more restrictive, non-conforming use and structure. The change would involve the destruction of the structures which presently house the greenhouse operation and the construction of four apartment buildings containing 248 dwelling units.
The Board of Adjustment is created by the Denver zoning ordinance and is limited in its jurisdiction and discretion by specific subsections of section 611.6 of that ordinance. In particular, section 611.6-5(3) makes it clear that the board's powers in all cases will be strictly construed. Such ordinance limitations on the board's powers were upheld in Cross v. Bilett, 122 Colo. 278, 221 P.2d 923.
First, it is important to note that the zoning ordinance distinguishes between the terms "use" and "structure", and contains separate sections dealing with "non-conforming use" and "non-conforming structure." Section 611.2-1(6) makes it necessary to obtain a permit to change a use and section 611.2-1(4) requires a permit to change a structure. There are also parallel provisions for continuing both non-conforming uses and non-conforming structures. Denver Revised Municipal Code, 617.1-2 (Uses) and 617.2-2 (Structures). However, there is no provision relating to the change of a non-conforming structure to another non-conforming structure comparable to the section which provides for a change of non-conforming use to another non-conforming use.
The import of these sections when they are juxtaposed is clear. The Bruggenthies have a right to change their non-conforming use from a greenhouse operation which is identified in the ordinance as "plant husbandry" to any Use by Right in a B-1 or residential district. Denver Revised Municipal Code, 617.1-3(2)(b). That right, however, extends only to a change in use. Since the ordinance clearly distinguishes "use" from "structure" and since the ordinance makes no mention of a right to change a non-conforming structure, the use change must be effected within existing structures or not at all.
Service Oil Co. v. Rhodus, Colo., 500 P.2d 807, Supreme Court No. 25295, announced September 5, 1972, establishes that a zoning ordinance may validly provide for *47 termination of a non-conforming use (or structure) upon the occurrence of reasonable conditions. The right to a change of use does not in and of itself include a right to change structures. Nowhere in the ordinance is there authority permitting the razing of a non-conforming structure, and the replacing of it with another non-conforming structure, even if the new buildings are to house a more restrictive nonconforming use. Absent language in the ordinance, the right to change a use does not carry with it any right to change the non-conforming structure housing it.
This interpretation is in line with basic zoning concepts.
"Non-conforming uses and structures are by definition, alien to the homogeneity of a district created under a zoning ordinance enacted in accordance with a comprehensive plan. * * *"
"Because non-conforming uses and structures, so long as they exist, prevent full realization of the zoning plan, the spirit of zoning is, and has been, to restrict, rather than increase, such non-conformities and to eliminate such uses as speedily as possible." 2 A. Rathkopf, The Law of Zoning and Planning, 62-1 (3d Ed.).
Speaking more particularly of structures, the original justification for recognizing the category of non-conforming structures was to protect the landowner's then existing investment in the property. When that investment is lost or is substantially impaired, whether by accidental damage (Denver Code, supra, 617.2-3(1)), by obsolescence (617.2-3(2)) or, as in this case, by the owner's action, the justification for extending that right vanishes. At that time, as the owner of unimproved property, the owner occupies in the same status under the ordinance as one whose land has never been improved. See Service Oil Co. v. Rhodus, supra.
A reading of the terms of the ordinance relating to non-conforming uses and structures dictates that the destruction of the existing, non-conforming greenhouse structure precludes the construction of a "changed" non-conforming structure. Since the board, by granting the Bruggenthies' permit, exceeded its authority and jurisdiction as defined in the ordinance, the judgment of the district court affirming the board's decision is reversed and the cause is remanded with directions to grant the relief prayed for by the appellants consistent with this opinion.
COYTE and DWYER, JJ., concur.