Hazel HARTLEY and Hartley & Sons, Inc., a Colorado corporation, Plaintiffs–Appellants,

v.

CITY OF COLORADO SPRINGS; The City Council, Colorado Springs; Robert M. Isaac, Mayor; Leon Young, Vice Mayor; Wilton Cogswell, Frank Parisi, William Snyder, Bruce Shepherd and Mary Ellen McNally, each in their official capacity; Walt Kreidel, Zoning Inspector, in his official capacity; Marty Miller and Hope Fonseca, Defendants–Appellees.

No. 87SA186.

Supreme Court of Colorado, En Banc.

Nov. 28, 1988.

John Randolph Torbet, Colorado Springs, for plaintiffs-appellants.

James G. Colvin, II, City Atty., M. Allen Ziegler, Jr., Chief Corporate Atty., Colorado Springs, for defendants-appellees.

VOLLACK, Justice.

Hazel and Joseph Hartley appeal the decision of the El Paso County District Court denying their claims for relief under C.R.C. P. 106(a)(4). The Hartleys claim that the Colorado Springs City Council (city council) abused its discretion in reconsidering a decision following a tie vote at a prior meeting and applied the incorrect standard in deciding that the Hartleys had "discontinued" their nonconforming use in violation of section 14–13–101(E) of the Colorado Springs Zoning Code. They also argue that the phrase "normal use" in section 14–13–101(E) is unconstitutionally vague. We affirm the judgment of the district court.

I.

In 1967, the Hartleys purchased a corner lot in a residential neighborhood in Colorado Springs.[1] The lot contained a one-family house and storage facilities that had been used to operate a commercial wood and coal yard. The Hartleys lived in the house and maintained the wood and coal business as a legal nonconforming use until November 15, 1982, when they leased the property to Kenneth and Tara West. The two year lease obligated the Wests to maintain the wood and coal business. The Hartleys then moved to their other residence in Florence, Colorado, where they maintained a separate wood and coal business. The Wests obtained a sales and use tax license in November 1982 and began to operate the wood and coal yard in Colorado Springs.

By all accounts, the volume of business at the Colorado Springs wood and coal yard dropped significantly when the Wests took over the business. The Wests failed to renew their sales and use tax license when it expired in July 1983 and paid no sales tax after October 1983. They disconnected their phone and were difficult to contact. The 1984 Colorado Springs business directory listed the property as vacant. Yet, at

---

1. The neighborhood was annexed into the City of Colorado Springs in 1917. According to a member of the city council, the neighborhood had been zoned for residential use since 1950 or 1951. The neighborhood is presently zoned R–4, which permits one- or two-family dwellings, multifamily dwellings of eight families or less, nursery schools, fraternity or sorority houses, nursing homes, and religious institutions. Colorado Springs Zoning Code § 14–3–703.

all times, there was wood and coal on the property. In October 1984, prior to termination of the lease, the Hartleys returned to the property, obtained a new sales and use tax license, and resumed their operation of the business.

In November 1984, a neighbor complained to the City of Colorado Springs (city) that the Hartleys had discontinued their nonconforming use of the property for more than one year in violation of section 14–13–101(E) of the Colorado Springs Zoning Code.[2] She provided affidavits of neighbors who observed no sales of wood or coal on the property. She stated that the Wests had allowed the business sign to fall down without replacing it and had allowed weeds to grow hip high in the front yard. She said many former customers of the Hartleys told her that they could never get in touch with the Wests to buy wood or coal. Based on her complaint, the City issued a stop order on April 22, 1985, prohibiting the Hartleys from using the property to sell wood or coal.

The Hartleys appealed the stop order to a Colorado Springs hearing officer. A hearing was held on July 3, 1985. The Hartleys provided affidavits of neighbors who had observed that the business was still in operation, cancelled checks and other receipts, testimony of buyers of wood or coal during that time, and the 1982 lease agreement.[3] Mrs. Hartley also testified to the difficulty of demonstrating continued use of the property when sales of wood and

coal are seasonal and not likely to occur in the summer months. On July 11, the hearing officer concluded that the Hartleys had not discontinued their nonconforming use, and dismissed the stop order. Relying on *Corper v. City & County of Denver*, 36 Colo.App. 118, 536 P.2d 874 (1975), *aff'd*, 191 Colo. 252, 552 P.2d 13 (1976), the hearing officer stated that proof of intent to abandon a nonconforming use is an element of discontinuance, and had not been shown in this case.

The neighbor appealed the hearing officer's decision to the city council. Notice to the public and the parties was provided, and a hearing was held on August 13, 1985. One of the nine members of the city council, however, was unable to attend the meeting. After hearing the evidence, the city council voted 4 to 4 to uphold the decision of the hearing officer. At that time, the city attorney informed the city council that he believed the effect of its tie vote was to uphold the hearing officer's decision because of the presumption of continuance of legal nonconforming uses. The city council asked the city attorney to submit a memorandum to the council at the next meeting concerning the legal effect of its tie vote.

At the next city council meeting on August 27, all nine members of the council were present. Neither of the parties was present, however, because the city council had not given public notice that it might reconsider its August 13 vote.[4] The city

2. In her original complaint, the neighbor claimed that the wood and coal yard had been unused from February 1983 to October 1984. She modified that claim at the city council hearings to a charge of nonuse from October 1983 to October 1984.

3. The record contains copies of checks and receipts dated between October 1983 and October 1984. In each case, however, receipts were given by and checks were paid to the Hartleys at their Florence residence rather than to the Wests at the wood and coal yard in Colorado Springs. At various hearings, witnesses stated that they ordered wood or coal from the Hartleys in Florence and paid them directly. Sometimes the Hartleys delivered the wood or coal from their Florence residence to the buyers, while at other times, the buyers would go to the Colorado Springs residence, and load and trans-

port the wood or coal themselves. On occasion, the Hartleys transported wood and coal to the Colorado Springs residence and left it for the buyers to pick up themselves. The Hartleys described this process as "transshipping," and offered it as evidence that the property was used to store and sell wood and coal throughout the time it was leased to the Wests.

There was no testimony that the Wests received money from sales of wood or coal after October 1983. The Wests did not testify at any of the hearings.

4. Although no notice was given to the general public of the possibility of reconsidering the August 13 decision at the August 27 meeting, the parties might have had actual notice of that possibility. The memorandum prepared by the city attorney was dated August 21. It stated that copies of the memorandum had been sent to the

attorney presented his memorandum to the city council. He told the council that the effect of its August 13 vote was "no decision." As a result, he said, the nonconforming use would continue unless the city council found by a majority vote that the nonconforming use had been discontinued. He concluded that the city council was free to reconsider the matter despite the August 13 vote. Upon motion of the ninth city council member, the council voted to reconsider the August 13 decision at a later hearing. The parties were informed of the decision to reconsider, and another hearing was scheduled.

On November 26, 1985, the city council met to reconsider the August 13 decision. Both parties were present, although no notice of the hearing had been given to other members of the public. The Hartleys objected to the hearing, claiming that the city council was without jurisdiction to reconsider its vote of August 13 because the council had not given notice to the parties or the public that it might vote to reconsider its decision at the August 27 meeting. The city council overruled the Hartleys' objection. Both parties were then permitted to present additional evidence, and the city council conducted a de novo review of the hearing officer's decision. At the conclu-

sion of the evidence, the city council voted 5 to 2 to reverse the decision of the hearing officer. Its position was that proof of nonuse of the property for the time stated in section 14–13–101(E) terminated the nonconforming use regardless of whether there was evidence of intent to abandon the nonconforming use.[5] The city council held that the Hartleys had discontinued their nonconforming use in violation of section 14–13–101(E).

The Hartleys appealed the November 26 decision of the city council to the El Paso County District Court pursuant to C.R.C.P. 106(a)(4). They argued that the city council acted arbitrarily by reconsidering its August 13 decision; misconstrued section 14–13–101(E); abused its discretion by failing to consider whether there was an intent to abandon the nonconforming use; and relied on an unconstitutionally vague zoning ordinance. On September 5, 1986, the district court affirmed the decision of the city council.

## II.

The Hartleys raise three arguments in support of their claim that the city council's decision of November 26, 1985, was procedurally defective. We reject all three arguments.

---

attorneys for both parties. Whether they received the memorandum before the August 27 meeting, however, is unclear.

5. At the conclusion of the November 26 hearing, the following discussion took place between members of the city council and James Colvin, the city attorney:

COUNCILMAN SNYDER: Mr. Colvin, on the last page of the Hearing Officer's decision, there was a reference to [Corper v. City & County of Denver, 36 Colo.App. 118, 536 P.2d 874 (1975), aff'd, 191 Colo. 252, 552 P.2d 13 (1976)]—
MR. COLVIN: Yes.
COUNCILMAN SNYDER: —Colorado case. Can you comment on that? It says that in addition to being an overt act of abandonment there must be shown an intent to abandon.
MR. COLVIN: That is what [Corper] says, if I recall the case. It dealt with a use around the University of Colorado Medical Center that the City and County of Denver was seeking to claim had been discontinued, and the [Court of Appeals] in that particular case

[said] that there had to be intent to abandon or at least discontinue a non-conforming use.
Again, it was the facts of the case, and I'm not that familiar with them.
COUNCILMAN SNYDER: Okay. Thank you.
MAYOR ISAAC: Isn't the point, that determination was required because they didn't have a provision that we had with respect to the definition in 14–13–101, is that correct, which said discontinuance is the stopping of normal operations for a period of one year, this is abandonment. It is not an intent element in there, the discontinuance by our definition—
MR. COLVIN: By our definition and then that gets back to what normal operations are or is for a wood and coal yard. Some people say it's one thing—
MAYOR ISAAC: And that's (inaudible) because of the difficulty in ever proving an intent to abandon, so we just have to make a determination whether there has been a discontinuance, which is the stopping of normal operation for a period of one year. And if we find that, that will be abandonment.

■ The Hartleys argue first that the city council was without jurisdiction to reconsider its August 13 decision because the zoning code does not expressly provide for reconsideration of a city council decision. We do not agree. The city council had express authority to reconsider a decision pursuant to Rule 18(k) of the "Legislative Procedures and Rules of Council" of the City of Colorado Springs. Rule 18(k) states that a motion to reconsider can be made "at the same meeting or at a meeting other than the meeting at which the action was taken."

■ The Hartleys argue second that the city council was without jurisdiction to decide whether to reconsider its August 13 decision on August 27 because it did not give notice to the parties or to the general public that it might do so. We do not agree. As we noted in rejecting the Hartleys' first procedural argument, the city council had authority pursuant to Rule 18(k) to reconsider its August 13 vote. It is significant that the August 27 meeting did not entail consideration of new evidence or *ex parte* communications to one of the parties. The council simply voted to reconsider the August 13 decision without pursuing the merits of the case.

■ The Hartleys argue third that the city council was without jurisdiction to hold the November 26 hearing because it failed to provide notice of the hearing to members of the public other than the parties. We do not agree. The Hartleys did not raise a timely objection to the meeting on that ground. They raised this argument for the first time in their brief to the district court, which properly characterized the claim as having been waived. Moreover, the facts of this case show no prejudice resulting from lack of notice to other members of the public. The parties had actual notice of the November 26 hearing for almost three months. They had ample time to gather witnesses and evidence. The hearing had been scheduled to accommodate the parties. Neither party argued that witnesses could not be obtained as a result of lack of notice. In this case, we conclude that failure to provide notice to other members of the public did not deprive the city council of jurisdiction to hold the November 26 hearing.

Having decided that the November 26 decision of the city council was not procedurally defective, we turn to the Hartleys' substantive allegations.

### III.

■ The Hartleys argue that the city council abused its discretion by failing to consider whether the Hartleys intended to abandon their nonconforming use. They argue that, under *Corper v. City & County of Denver*, 36 Colo.App. 118, 536 P.2d 874 (1975), *aff'd*, 191 Colo. 252, 552 P.2d 13 (1976), intent to abandon must be shown in determining whether a nonconforming use has been discontinued. The Hartleys contend that the evidence shows that they did not intend to abandon their nonconforming use. In support of this, they point to the lease, which obligated the Wests to continue operating the wood and coal yard; to the business insurance policy the Hartleys maintained throughout the time they leased the property to the Wests; and to their periodic restocking of the wood and coal yard. The city argues that, under *Wyatt v. Board of Adjustment–Zoning*, 622 P.2d 85 (Colo.App.1980), proof of intent to abandon is not required when the zoning ordinance specifies a particular time period for terminating a nonconforming use. We conclude that the city council did not abuse its discretion in failing to consider whether the Hartleys intended to abandon their nonconforming use.

### A.

Nonconforming uses in Colorado Springs are regulated by sections 14–13–101 to –105 of the Colorado Springs Zoning Code. Section 14–13–101(E) states:

If a nonconforming use of any building or structure is discontinued, or its normal operation stopped for a period of one year, the use of the building or structure shall thereafter conform to a use permitted in the zone in which it is located.

Section 14–13–101(E) by its terms does not impose a requirement that the city council consider intent to abandon in determining whether a nonconforming use has been abandoned. Despite the absence of such a requirement in the words of the ordinance, many courts have construed similar zoning ordinances as requiring proof of intent to abandon.[6]

### B.

We have not squarely addressed whether proof of intent to abandon is required in order to terminate a nonconforming use, although we have touched upon the issue on three occasions. In *Beszedes v. Board of County Commissioners,* 116 Colo. 123, 178 P.2d 950 (1947), we upheld an Arapahoe County zoning ordinance that eliminated nonconforming uses that had been discontinued for at least one year. We concluded that proof of discontinuance for one year was sufficient to justify termination of the nonconforming use. *Id.* at 128, 178 P.2d at 952.

In *Board of Adjustment v. Abe Perlmutter Construction Co.,* 131 Colo. 230, 280 P.2d 1107 (1955), we reversed a determination by the Denver zoning board that a nonconforming use had been abandoned for more than six months in violation of a discontinuance ordinance because the evidence clearly established that the nonconforming use of the property had been maintained during that time. We stated that the activities of the owners "negative[d] any intent to discontinue the use of the property." *Id.* at 237, 280 P.2d at 1111. We did not decide, however, whether intent to abandon must be shown in discontinuing a nonconforming use.

In *Service Oil Co. v. Rhodus,* 179 Colo. 335, 500 P.2d 807 (1972), we upheld the constitutionality of a zoning ordinance requiring restoration of a nonconforming building to commence within six months of its destruction by fire. We held that the Englewood zoning board properly denied a variance request because the property owner failed to begin rebuilding a gas station within six months of its destruction by fire.

In deciding that the ordinance was a reasonable regulation of property rights, we stated:

> While we think that an intent to abandon a nonconforming use is required, there can be no firm and fast rule as to what constitutes sufficient evidence of abandonment. Each case necessarily must depend upon its own facts. While destruction of the premises by fire, flood, hurricane and other natural forces does not show an intent to abandon the nonconforming use of a nonconforming structure, such destruction, coupled with a failure to take reasonably prompt action to rebuild, may be sufficient to manifest such an intent.

*Id.* at 349, 500 P.2d at 814 (citation omitted). The evidence showed that the only reason the applicant delayed rebuilding the gas station was to settle the insurance claim following the fire and that he attempted to commence restoration promptly thereafter. Despite such evidence tending to negate an intent to abandon, we held that the applicant had abandoned his nonconforming use. *Id.*

It is apparent that *Beszedes, Perlmutter,* and *Service Oil* have not provided clear instruction on the issue of intent to abandon. In *Corper v. City & County of Denver,* 36 Colo.App. 118, 536 P.2d 874 (1975), *aff'd,* 191 Colo. 252, 552 P.2d 13 (1976), the court of appeals stated: "While there is no immutable rule as to what constitutes sufficient evidence of abandonment, there must be some showing of intent to abandon." *Id.* at 126, 536 P.2d at 879 (citing *Service Oil*). In *Wyatt v. Board of Adjustment–Zoning,* 622 P.2d 85 (Colo.App. 1980), however, the court of appeals stated: "A nonconforming use may be terminated by ordinance after the lapse of a reasonable period of time regardless of whether the property owner intends to abandon that use." *Id.* at 86 (citing *Service Oil* and *Beszedes*).

Federal courts have fared no better in deciphering the reasoning of these cases. In *C.F. Lytle Co. v. Clark,* 491 F.2d 834

---

**6.** *See* note 10 *infra.*

(10th Cir.1974), the Tenth Circuit Court of Appeals construed these cases to mean that intent to abandon need not be shown when the zoning ordinance specifies a time period for terminating the nonconforming use. *Id.* at 837 & n. 1 (relying on *Beszedes* and finding *Service Oil* inapplicable).

Commentators similarly have been unable to discern whether Colorado requires proof of intent to abandon a nonconforming use when the zoning ordinance specifies a time for discontinuance. *Compare* 8A E. McQuillan, *The Law of Municipal Corporations* § 25.193, at 70 n. 8 (3d ed. 1986) (intent to abandon is irrelevant (citing *Service Oil* and *Beszedes*)) *and* 4 A. Rathkopf & D. Rathkopf, *The Law of Zoning and Planning* § 51.08[2], at 51–137 n. 17 (4th ed. 1988) (intent to abandon is irrelevant (citing *Beszedes*)) *and* 4A N. Williams & J. Taylor, *American Land Planning Law* § 115.14, at 216–17 (rev. ed. 1986) (intent to abandon is irrelevant (citing *Beszedes*)) *and* 4 E. Yokley, *Zoning Law and Practice* § 22–13, at 94 (4th ed. 1979) (ordinance that fails to require proof of intent to abandon is not unreasonable so long as it specifies time for discontinuance (citing *Service Oil*)) *and* 82 Am.Jur.2d *Zoning and Planning* § 220, at 742 n. 10 (1976) (intent to abandon is irrelevant (citing *Perlmutter*)) *with* 1 R. Anderson, *American Law of Zoning* § 6.68, at 650 n. 3 (3d ed. 1986) (intent to abandon is required (citing *Beszedes*)) *and* 101A C.J.S. *Zoning and Land Planning* § 174, at 532 n. 84 (1979) (intent to abandon is required (citing *Service Oil*)) *and* Annotation, *Zoning: Right to Resume Nonconforming Use of Premises After Voluntary or Unexplained Break in the Continuity of Nonconform-*ing Use, 57 A.L.R.3d 279, 323–24 (1974) (intent to abandon is required but may be inferred from destruction of nonconforming building coupled with failure to take reasonably prompt action to rebuild (citing *Service Oil*)) *and* Annotation, *Zoning: Right to Resume Nonconforming Use of Premises After Involuntary Break in the Continuity of Nonconforming Use Caused by Difficulties Unrelated to Governmental Activity*, 56 A.L.R.3d 14, 43 (1974) (intent to abandon is required (citing *Service Oil*)).

Because dicta concerning intent to abandon nonconforming uses in our previous decisions have confused rather than enlightened the court of appeals, the federal court, and commentators as to the rule in Colorado, further analysis is required.

## C.

Most courts now construe the terms "abandonment" and "discontinuance" to be synonymous.[7] Commentators agree, however, that historically the terms were not considered synonymous.[8] In the context of termination of nonconforming uses, "abandonment" was interpreted to require proof of intent to abandon in concurrence with an act or failure to act which carries an implication of abandonment. *See Turcuit v. City of Galveston*, 658 S.W.2d 832, 834 (Tex.Civ.App.1983); *see also Black's Law Dictionary* 2 (5th ed. 1979) (defining "abandonment" to include "both the intention to abandon and the external act by which the intention is carried into effect"). "Discontinuance," by contrast, was interpreted *not* to require proof of intent to abandon so long as there was proof of

---

**7.** *See Dandy Co. v. Civil City*, 401 N.E.2d 1380, 1383 (Ind.App.1980); *Union Quarries, Inc. v. Board of County Comm'rs*, 206 Kan. 268, 272, 478 P.2d 181, 186 (1970); *Pioneer Insulation & Modernizing Corp. v. City of Lynn*, 331 Mass. 560, 565, 120 N.E.2d 913, 916 (1954); *Rudnik v. Mayers*, 387 Mich. 379, 380, 196 N.W.2d 770, 772 (1972).

**8.** *See generally* 1 R. Anderson, *American Law of Zoning* §§ 6.65, 6.68 (3d ed. 1986); D. Hagman & J. Juergensmeyer, *Urban Planning and Land Development Control Law* § 4.33, at 120–21 (2d ed. 1986); 8A E. McQuillan, *The Law of Munici-*pal Corporations § 25.191–.193 (3d ed. 1986); 4 A. Rathkopf & D. Rathkopf, *The Law of Zoning and Planning* § 51.08[2], at 51–135 (4th ed. 1988); 4 E. Yokley, *Zoning Law and Practice* § 22–13 (4th ed. 1979); Annotation, *Zoning: Right to Resume Nonconforming Use of Premises After Voluntary or Unexplained Break in the Continuity of Nonconforming Use*, 57 A.L.R.3d 279 (1974); Annotation, *Zoning: Right to Resume Nonconforming Use of Premises After Involuntary Break in the Continuity of Nonconforming Use Caused by Difficulties Unrelated to Governmental Activity*, 56 A.L.R.3d 14 (1974).

actual abandonment in the form of an act or failure to act which carries an implication of abandonment. Use of the term "discontinuance" represented a conscious decision on the part of legislators to avoid the problems of proof inherent in determining intent to abandon a nonconforming use. *See* 1 R. Anderson, *American Law of Zoning* § 6.68, at 646–47 (3d ed. 1986); 6 R. Powell, *The Law of Property* ¶ 871[3][f][iii], at 79C–210.29 (rev. ed. 1988); 4 E. Yokley, *Zoning Law and Practice* § 22–13, at 84 (4th ed. 1979); *see also League to Save Lake Tahoe v. Crystal Enters.*, 685 F.2d 1142, 1146 (9th Cir.1982). Despite semantic and evidentiary differences, however, most courts treated discontinuance ordinances as synonymous with abandonment ordinances by importing an intent to abandon into discontinuance ordinances.[9] As a result, the majority rule in cases of voluntary interruption of nonconforming uses is that such use will not be considered discontinued without proof of (1) intent to abandon; and (2) actual abandonment in the form of an act or failure to act which implies abandonment.[10] A few states hold that intent to abandon must be shown, but conclude that voluntary nonuse of the property for the time specified in the discontinuance ordinance creates a rebuttable presumption of intent to abandon.[11]

Not all states import an intent to abandon into their discontinuance ordinances, however. A growing minority of states hold that voluntary nonuse of the property for the time specified in a discontinuance ordinance terminates the nonconforming use regardless of intent to abandon. *See Anderson v. City of Paragould*, 16 Ark. App. 10, 11–12, 695 S.W.2d 851, 852 (1985); *Essex Leasing, Inc. v. Zoning Board of Appeals*, 206 Conn. 595, 602–03, 539 A.2d 101, 105 (1988); *Pailet v. City of New Orleans*, 433 So.2d 1091, 1093 (La.App.), *cert. denied*, 440 So.2d 757 (1983); *Union Square Ass'n, Inc. v. Marc Lounge, Inc.*, 75 Md.App. 465, 470–72, 541 A.2d 1321, 1324, *cert. denied*, 313 Md. 612, 547 A.2d 189 (1988); *Texas Nat'l Theatres, Inc. v. City of Albuquerque*, 97 N.M. 282, 287, 639 P.2d 569, 574 (1982); *Sun Oil Co. v. Board of Zoning Appeals*, 57 A.D.2d 627, 393 N.Y.S.2d 760 (1977). Our attention focuses on this group.

### D.

The rule that intent to abandon must be shown before discontinuing a nonconforming use has been criticized. As one commentator notes, the rule produces results that are not only "unfortunate but silly" because it encourages property owners who have actually abandoned their nonconforming use to commit perjury, and because it not only disregards but supersedes the intention of the legislative body that designed the ordinance. 4A N. Williams & J. Taylor, *American Land Planning Law* § 115.06, at 193 (rev. ed. 1986).

■ It has been said that "the fundamental problem facing zoning is the inability to eliminate the nonconforming use." 4

---

**9.** *See Board of Zoning Adjustment v. Boykin*, 265 Ala. 504, 507–08, 92 So.2d 906, 909 (1957); *McLay v. Maryland Assemblies, Inc.*, 269 Md. 465, 467–69 & n. 1, 306 A.2d 524, 526 & n. 1 (1973); *Cape Resort Hotels, Inc. v. Alcoholic Licensing Bd.*, 385 Mass. 205, 220–22, 431 N.E.2d 213, 222 (1982), *appeal after remand*, 388 Mass. 1013, 446 N.E.2d 1070 (1983); *Andrew v. King County*, 21 Wash.App. 566, 570–74, 586 P.2d 509, 513–14 (1978).

**10.** For a listing of cases holding that both intent to abandon and actual abandonment must be present to terminate a nonconforming use, see 1 R. Anderson, *American Law of Zoning* § 6.65, at 634 n. 23 (3d ed. 1986); 8A E. McQuillan, *The Law of Municipal Corporations* § 25.192, at 64 n. 1 (3d ed. 1986); 4 A. Rathkopf & D. Rathkopf, *The Law of Zoning and Planning* § 51.08[1], at

51–131 n. 11 (4th ed. 1988); 4 E. Yokley, *Zoning Law and Practice* § 22–13, at 84 & n. 205 (4th ed. 1979); Annotation, *Zoning: Right to Resume Nonconforming Use of Premises After Voluntary or Unexplained Break in the Continuity of Nonconforming Use*, 57 A.L.R.3d 279, 311–16 (1974); *see also, e.g., Stuckman v. Kosciusko County Bd. of Zoning Appeals*, 506 N.E.2d 1079 (Ind.1987); *Burlington Sand & Gravel, Inc. v. Town of Harvard*, 26 Mass.App. 436, 528 N.E.2d 889 (1988); *Washington Arcades Assocs. v. Zoning Bd. of Review*, 528 A.2d 736 (R.I.1987).

**11.** *See Martin v. Beehan*, 689 S.W.2d 29, 31 (Ky.App.1985); *City of Minot v. Fisher*, 212 N.W. 2d 837, 841 (N.D.1973); *Rayel v. Bridgeton Township Zoning Hearing Bd.*, 98 Pa.Commw. 455, 457–59, 511 A.2d 933, 935 (1987).

E. Yokley, *Zoning Law and Practice* § 22–13, at 99 (4th ed. 1979) (citing *Grant v. Mayor & City Council*, 212 Md. 301, 129 A.2d 363 (1957); *City of Los Angeles v. Gage*, 127 Cal.App.2d 442, 274 P.2d 34 (1954)). Nonconforming uses are disfavored because they reduce the effectiveness of zoning ordinances, depress property values, and contribute to the growth of urban blight. *See City & County of Denver v. Board of Adjustment*, 31 Colo.App. 324, 331, 505 P.2d 44, 47 (1972) (quoting 2 A. Rathkopf, *The Law of Zoning and Planning* 62–1 (3d ed. 1976)); Comment, *Conforming the Nonconforming Use: Proposed Legislative Relief for a Zoning Dilemma*, 33 Sw.L.J. 855, 863 (1979); *see also* Tips, *Nonconforming Uses—What Can Be Done With Them and How to Get Rid of Them*, 1980 Inst. on Plan. Zoning & Eminent Domain 85, 108. Because of their undesirable effect on the community, nonconforming uses should be eliminated as speedily as possible. *Wasinger v. Miller*, 154 Colo. 61, 66, 388 P.2d 250, 253 (1964); *Denver Police Protective Ass'n v. City & County of Denver*, 710 P.2d 3, 6 (Colo.App. 1985); 4 A. Rathkopf & D. Rathkopf, *The Law of Zoning and Planning* § 51.06[1], at 51–43 to –617 (4th ed. 1988). Accordingly, zoning provisions allowing nonconforming uses to continue should be strictly construed, and zoning provisions restricting nonconforming uses should be liberally construed. *See City & County of Denver v. Board of Adjustment*, 31 Colo.App. 324, 331, 505 P.2d 44, 47 (1972); *see also Hooper v. Delaware Alcoholic Beverage Control Comm'n*, 409 A.2d 1046, 1050 (Del.Super.Ct.1979); *Brown County v. Meidinger*, 271 N.W.2d 15, 18–19 (S.D.1978) (citations omitted); 1 R. Anderson, *American Law of Zoning* § 6.35, at 557–58 (3d ed. 1986).

Despite their undesirable effect on the community, however, nonconforming uses receive constitutional protection from unreasonable zoning regulations. *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926); 4 A. Rathkopf & D. Rathkopf, *The Law of Zoning and Planning* § 51.06[1], at 51–56 (4th ed. 1988). In *Service Oil* we stated the rationale for finding certain zoning ordinances that terminate nonconforming uses to be reasonable:

> If a property owner has invested money in improvements in order to put his property to a particular use, which is lawful at that time, and if that use is subsequently outlawed by a zoning ordinance, he loses not only the potential use but also the value of his investment. To impose this additional loss upon him is unreasonable, and therefore he is entitled to continue to use his property as he did before. On the other hand, if the improvements are destroyed or abandoned, he has lost the value of his investment independently of the ordinance and there is no reason why his relationship to the zoning ordinance should be any different from that of his neighbor whose property was unimproved.

*Service Oil*, 179 Colo. at 347–48, 500 P.2d at 814. This rationale retains its vitality today. *Cf. Art Neon Co. v. City & County of Denver*, 488 F.2d 118, 121–22 (10th Cir. 1973) (Colorado zoning ordinance terminating nonconforming use following amortization period does not result in a taking of property without just compensation so long as it meets the test of reasonableness). A zoning ordinance prohibiting resumption of a nonconforming use that has been discontinued is constitutionally reasonable so long as it specifies a reasonable time period for terminating the nonconforming use. *See Service Oil*, 179 Colo. at 350–51, 500 P.2d at 814 (Pringle, C.J., concurring). Section 14–13–101(E) contains a one year time period. A one year time period is commonly employed in discontinuance ordinances. 6 R. Powell, *The Law of Property* ¶ 871[3][f][iii], at 79C–210.28 (rev. ed. 1988). This court upheld a discontinuance ordinance containing such a time period in *Beszedes*. We conclude that section 14–13–101(E) is a reasonable regulation of nonconforming uses.

In addition to the constitutional consideration of reasonableness of zoning regulations, legislative acts in derogation of the common law, like statutes interfering with private property rights, must be strictly construed. *See Pigford v. People*, 197

Colo. 358, 360, 593 P.2d 354, 356 (1979); *McMillin v. State,* 158 Colo. 183, 187–88, 405 P.2d 672, 674 (1965); *see also Interstate Commerce Comm'n v. Cincinnati, N.O. & T. Pac. Ry. Co.,* 167 U.S. 479, 17 S.Ct. 896, 42 L.Ed. 243 (1897); 8A E. McQuillan, *The Law of Municipal Corporations* § 25.193, at 70 (3d ed. 1986).

As a matter of statutory construction, interpreting section 14–13–101(E) not to require proof of intent to abandon would not restrict the right of property owners to maintain a nonconforming use. Interpreting section 14–13–101(E) to require proof of intent to abandon, however, would expand the scope of the ordinance in contravention of the rule that ordinances regulating nonconforming uses must be narrowly construed.

We agree with the observation that, all in all, the rule that intent to abandon a nonconforming use must be shown "has been less carefully thought through than almost any other major area of American planning law." 4A N. Williams & J. Taylor, *American Land Planning Law* § 115.03, at 190 (rev. ed. 1986). It imposes a difficult evidentiary burden on those seeking to prove that a property owner has discontinued a nonconforming use, encourages property owners to commit perjury, impedes the desirable goal of creating uniform zoning plans, and defeats the intention of municipalities in their attempts to avoid imposing such a requirement in the first place. We therefore reject the majority rule and conclude that, in the absence of express language to the contrary, intent to abandon need not be shown when a zoning ordinance specifies a reasonable time for discontinuing a nonconforming use.

Construing section 14–13–101(E) not to require proof of intent to abandon is consistent with our observations in *Beszedes,* but not consistent with dicta in *Perlmutter* and *Service Oil.* Such a construction is also inconsistent with the court of appeals' holding in *Corper.* To the extent *Perlmutter, Service Oil,* and *Corper* are inconsistent with this opinion, they are overruled.

IV.

The Hartleys argue that the city council abused its discretion by failing to determine the character of the use at the time the property was zoned R–4. Section 14–1–109 of the Colorado Springs Zoning Code defines a nonconforming use as "a use which lawfully occupied a building or land at the time this chapter or any amendments to this chapter become effective and which does not conform with the use regulations of the zone in which it is located." The Hartleys contend that the city council cannot determine whether the nonconforming use was discontinued without comparing the character of the use at present with the character of the use at the time the R–4 zoning ordinance "became effective." Because the city council considered no evidence of the character of the property at the time the property was zoned R–4, argue the Hartleys, there was no basis for determining whether the nonconforming use had been terminated. We do not agree that such a consideration is required.

There is no dispute in this case as to whether use of the wood and coal yard prior to November 1982 was a legal nonconforming use. Both sides agree that it was. Also, there was no evidence or even claim that the use changed at any time prior to November 1982. We can infer from this that the Hartleys' use of the property in November 1982 was substantially the same as it was when the R–4 zoning ordinance became effective. Therefore, even if the Hartleys' claim is correct that the use of the property at the time the zoning ordinance became effective must be determined as a threshold matter, that information was available to the city council.

A plain reading of section 14–13–101(E), however, reveals that the city council is not required to consider the character of the use of the property at the time the zoning ordinance became effective. Section 14–13–101(E) terminates a nonconforming use that has been "discontinued, or its normal operation stopped for a period of one year." Statutory words and phrases should be given their ordinary and accepted meaning unless they have acquired a tech-

nical meaning through legislative definition or judicial interpretation. *Parrish v. Lamm*, 758 P.2d 1356, 1368 (Colo.1988); *Charnes v. Lobato*, 743 P.2d 27, 30 (Colo. 1988). "Discontinuance" denotes complete stoppage of activities. *See Black's Law Dictionary* 417 (5th ed. 1979) (defining "discontinuance" as "[e]nding, causing to cease, ceasing to use, giving up, leaving off"); *Webster's Third New International Dictionary* 646 (1986) (defining "discontinue" as "to break off, give up, terminate, end the operations or existence of, cease to use"). Section 14–13–101(E) simply specifies the time period for measuring whether a nonconforming use can be terminated. As the district court properly observed, this requires a finding of complete cessation of the nonconforming use.[12] A mere reduction in sales will not suffice to terminate the nonconforming use under section 14–13–101(E).[13] We therefore conclude that the city council did not abuse its discretion in failing to consider the character of the use at the time the R–4 zoning ordinance became effective.

## V.

 The Hartleys argue that the city council's November 26 decision to terminate their nonconforming use was not supported by evidence in the record. We disagree.

We will not disturb the decision of an inferior tribunal that is supported by substantial evidence in the record. *See Sellon v. City of Manitou Springs*, 745 P.2d 229, 235 (Colo.1987); *Dillon Co. v. City of Boulder*, 183 Colo. 117, 123, 515 P.2d 627, 630 (1973). While both sides presented evidence to support their position, there was evidence to support the conclusion that the Hartleys had discontinued their nonconforming use. Evidence supporting the city council's decision included the testimony of the complaining neighbor, supporting affidavits of neighbors who saw no business activity on the property, failure of the Wests and the Hartleys to maintain a current use and sales tax license to sell wood and coal on the premises, and the listing of the property as vacant in the 1984 business directory. We therefore conclude that the city council did not abuse its discretion in concluding that the Hartleys had discontinued their nonconforming use.

## VI.

 The Hartleys argue that section 14–13–101(E) is unconstitutionally vague because the phrase "normal operation" is not defined. Section 14–13–101(E) requires a property owner to terminate the nonconforming use of any building or structure that has been "discontinued, or its *normal operation* stopped for a period of one year." (Emphasis added.) We find no vagueness in section 14–13–101(E).

 A legislative enactment whose terms are unduly vague violates the due process clause of the fourteenth amendment. *Parrish*, 758 P.2d at 1367. A legislative enactment is void for vagueness if it fails to provide fair warning of the conduct prohibited or if its standards are so ill-defined as to create a danger of arbitrary and capricious enforcement. *Eckley v. Colorado Real Estate Comm'n*, 752 P.2d 68, 73 (Colo.1988); *Sellon*, 745 P.2d at 233. Legislative enactments enjoy a presumption of constitutionality, however, and the person challenging them bears the burden of proving their unconstitutionality beyond a reasonable doubt. *People v. McBurney*, 750 P.2d 916, 920 (Colo.1988).

Courts in other states have upheld statutes containing the word "normal" against vagueness challenges. *See, e.g., Brooks v.*

---

**12.** In its oral ruling on August 5, 1986, the district court stated: "[I]n the Court's opinion, when [section 14–13–101(E) ] uses rather declarative words such as 'discontinued' or 'stopped,' there's no need for a comparison. Stopped is stopped. Stopping means nothing. There's then no need to compare it to anything else."

**13.** There is some question whether stoppage of normal operation of a use for a period of one year is a complete definition of "discontinued" or whether other forms of discontinuance are also contemplated by section 14–13–101(E). Because stoppage of normal operation is the type of discontinuance at issue in this case, we need not determine the full scope of the meaning of "discontinued" at this time.

*Island Creek Coal Co.,* 678 S.W.2d 791 (Ky.App.1984) (upholding worker's compensation statute denying benefits to employees "eligible for normal old age benefits" under federal program); *City of Portland v. Jacobsky,* 496 A.2d 646 (Me.1985) (upholding obscenity statute prohibiting depiction of "normal or perverse" sexual acts); *State v. Guy,* 196 Neb. 308, 242 N.W.2d 864 (1976) (upholding ordinance defining "disturbance" as "conduct contrary to the normal presentation of business" which disturbs or interrupts orderly progress of the proceeding); *Bloom v. Municipal Court,* 16 Cal.3d 71, 545 P.2d 229, 127 Cal.Rptr. 317 (1976) (upholding obscenity statute prohibiting depiction of "normal or perverse" sexual acts); *State v. Mahaney,* 55 Wis.2d 443, 198 N.W.2d 373 (1972) (upholding disturbing the peace statute prohibiting interference with "activities normally carried on" in a public building); *State ex rel. Heck's, Inc. v. Gates,* 149 W.Va. 421, 141 S.E.2d 369 (1965) (upholding Sunday closing law exempting sale or rental of "equipment essential to the normal use or operation" of certain recreational facilities).

The "normal operation" in this case refers to the sale of wood and coal in a residential neighborhood. As such, the phrase is sufficiently definite to pass constitutional muster.

## VII.

We hold that the city council's decision to terminate the Hartleys' nonconforming use was not procedurally defective. The decision was supported by competent evidence. The city council did not abuse its discretion in failing to consider the nature of the use on the property at the time the zoning ordinance became effective or in failing to consider evidence of intent to abandon the nonconforming use. The ordinance is not unconstitutionally vague.

The judgment of the district court is affirmed.