Concerning the Application for Water Rights of Appellant Qualls, Inc., in Adams County.

QUALLS, INC., Appellant,

v.

Alan D. BERRYMAN, Division Engineer, Water Division No. 1, Appellee.

No. 89SA63.

Supreme Court of Colorado, En Banc.

April 9, 1990.

Vranesh and Raisch, Eugene J. Roirdan and Brian M. Nazarenus, Boulder, for appellant.

No appearance for appellee.

Justice VOLLACK delivered the Opinion of the Court.

Qualls, Inc. appeals an order entered by the District Court, Water Division No. 1 (the water court), denying Qualls' motion to amend a 1988 order entered by the water court. The water court's 1988 order modified the water court's 1984 decree of conditional water rights claimed by Qualls. The 1988 order removed the diligence requirement from the 1984 decree and declared that the water court would retain jurisdiction over Qualls' well. The water court entered the 1988 order pursuant to subsection 37–92–305(11), 15 C.R.S. (Supp.1989). Qualls argues that the water court had no jurisdiction to enter the 1988 order. Qualls also contends that the retained-jurisdiction provision of the 1988 order constitutes an unconstitutional retrospective application of subsection 37–92–305(11). Finally, Qualls contends that the 1988 order is barred by collateral estoppel.

We affirm.

## I.

In 1974, Qualls obtained a permit from the state engineer to withdraw 275 acre-feet of water a year from a nontributary aquifer identified in the permit as the Arapahoe Aquifer. In 1982, Qualls received a permit to withdraw the same amount of water from the aquifer through a replacement well in Adams County. The wells are located outside the boundaries of any designated ground water basin.

On December 30, 1983, Qualls filed an application for nontributary underground water rights to determine its water rights in the Arapahoe Aquifer. In the application Qualls sought a "decree confirming its right to all unappropriated water" within the aquifer. Qualls estimated that under such a decree it would continue to appropriate 275 acre-feet of water annually from the aquifer. The application identified several intended beneficial uses of the water,

including irrigation, domestic, industrial, and recreational uses. Box Elder Investment Company filed a statement of opposition alleging that its water rights would be materially injured if appropriate terms and conditions were not entered into the decree. The statement of opposition also contended that Qualls' application failed to set forth facts demonstrating that unappropriated water was available for withdrawal by Qualls in the amount claimed, and that the application failed to set forth facts showing that the water rights of others would not be injured.

On November 27, 1984, the water court issued a decree (the 1984 decree) granting Qualls' application for determination of a conditional water right to withdraw 275 acre-feet of water a year from the Arapahoe Aquifer. The decree listed the beneficial uses to which Qualls intended to dedicate the water. The decree also stated that in order to continue its conditional water right in full force and effect, Qualls would have to submit a timely application for a quadrennial finding of reasonable diligence, or make a timely showing that the conditional water right had become absolute by reason of Qualls' appropriation of the water.

In 1985, before Qualls had completed its appropriation and obtained an absolute right to withdraw 275 acre-feet annually from the Arapahoe Aquifer, the legislature enacted the 1985 amendments to the Water Right Determination and Administration Act of 1969, §§ 37–92–101 to 37–92–602, 15 C.R.S. (1974 & Supp.1989) (Water Right Act), which removed nontributary ground water outside of designated basins from the system of prior appropriation. *See* 1985 Colo.Sess.Laws 1160–69. The 1985 amendments added a subsection (2) to section 37–90–102. That subsection provides:

The general assembly finds and declares that the allocation of nontributary ground water pursuant to statute is based upon the best available evidence at this time. The general assembly recognizes the unique, finite nature of nontributary ground water resources outside

of designated ground water basins and declares that such nontributary ground water shall be devoted to beneficial use in amounts based upon conservation of the resource and protection of vested water rights. Economic development of this resource shall allow for the reduction of hydrostatic pressure levels and aquifer water levels consistent with the protection of appropriative rights in the natural stream system. The doctrine of prior appropriation shall not apply to nontributary ground water. To continue the development of nontributary ground water resources consonant with conservation shall be the policy of this state. Such water shall be allocated as provided in this article upon the basis of ownership of the overlying land. This policy is a reasonable exercise of the general assembly's plenary power over this resource.

The 1985 amendments also added subsection (11) to section 37–92–305. Subsection 37–92–305(11) provides:

Nontributary ground water shall not be administered in accordance with priority of appropriation, and determinations of rights to nontributary ground water need not include a date of initiation of the withdrawal project. Such determinations shall not require subsequent showings or findings of reasonable diligence, and such determinations entered prior to July 1, 1985, which require such showings or findings shall not be enforced to the extent of such diligence requirements on or after said date. The water judge shall retain jurisdiction as to determinations of ground water from wells described in section 37–90–137(4) as necessary to provide for the adjustment of the annual amount of withdrawal allowed to conform to actual local aquifer characteristics from adequate information obtained from well drilling or test holes. Such decree shall then control the determination of the quantity of annual withdrawal allowed in the well permit as provided in section 37–90–137(4). Rights to the use of ground water from wells described in section 37–90–137(4) pursuant to all such determinations shall be

deemed to be vested property rights; except that nothing in this section shall preclude the general assembly from authorizing or imposing limitations on the exercise of such rights for preventing waste, promoting beneficial use, and requiring reasonable conservation of such ground water.

Subsection 37–92–305(11) removed the due diligence requirements with respect to conditional water rights for nontributary ground water, and provided that water courts may modify withdrawal authorizations to the detriment of the decree holder if, according to information acquired after entry of the original decree, local aquifer characteristics make such modifications necessary.

On October 14, 1988, the water court issued its 1988 order altering its 1984 conditional water right decree to conform to the new system of water rights management for nontributary ground water enacted in subsection 37–92–305(11). The 1988 order essentially repeated the contents of subsection 37–92–305(11). The 1988 order specified that Qualls was not required to make further showings of reasonable diligence in the appropriation of its water. The order also provided that "[t]he water judge shall retain jurisdiction pursuant to 37–92–305(11)." The 1988 order did not contain any other provisions.

Qualls submitted a motion to amend the 1988 order by striking the sentence in the 1988 order referring to the water court's retained jurisdiction over Qualls' well. Qualls did not contest the portion of the 1988 order eliminating the reasonable diligence requirement. The water court denied the motion. Qualls appeals.

## II.

■ The legislature has plenary power over the disposition of nontributary ground water, including nontributary ground water outside of designated basins. *State of Colorado v. Southwestern Colorado Water Conservation Dist.,* 671 P.2d 1294, 1316–18 (Colo.1983); *see also* § 37–92–102(2), 15 C.R.S. (Supp.1989). In

*State v. Southwestern,* 671 P.2d at 1318, we recognized the legislature's power to legislate concerning nontributary waters, and stated that "[t]he state interest in providing a system for utilization of this depletable and vital resource can scarcely be doubted." In order to address Qualls' challenge to the water court's order we must examine recent legislative exercises of plenary power in the administration of nontributary ground water.

In *State v. Southwestern,* 671 P.2d at 1311, we declined to follow our previous cases which suggested that the Water Right Act gave water courts jurisdiction to adjudicate rights to nontributary ground water outside of designated basins. *See also Southeastern Colorado Water Conservancy Dist. v. Huston,* 197 Colo. 365, 370, 593 P.2d 1347, 1349–50 (1979). Shortly after we issued our original opinion in *State v. Southwestern,* the legislature amended subsection 37–92–203(1) to explicitly grant to water courts the jurisdiction to adjudicate rights to nontributary ground water outside of designated basins. 1983 Colo.Sess.Laws 2079; *see State Engineer v. Smith Cattle, Inc.,* 780 P.2d 546, 550 n. 4 (Colo.1989); *State v. Southwestern,* 671 P.2d at 1311 n. 25. The amendment became effective on October 11, 1983. 1983 Colo.Sess.Laws 2080. Qualls submitted its application for a determination of conditional water rights in the nontributary Arapahoe Aquifer in December of 1983. The water court adjudicated Qualls' application under the 1983 amendment to subsection 37–92–203(1).

■ From the time that the 1983 amendments to subsection 37–92–203(1) took effect until the legislature enacted the 1985 amendments, nontributary ground water outside designated ground water basins was subject to the doctrine of prior appropriation. According to prior appropriation doctrine, a "conditional water right" is a "right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon

which such water right is to be based." § 37–92–103(6), 15 C.R.S. (1974). "A conditional water right is adjudicated by a judicial decree recognizing the existence of an uncompleted application." *Closed Basin Landowners Ass'n v. Rio Grande Water Conservation Dist.,* 734 P.2d 627, 635 (Colo.1987). If the applicant completes the appropriation with reasonable diligence, the priority date awarded to the applicant's water right is the date of the initiation of the appropriation. § 37–92–305(1), 15 C.R.S. (1974); *Closed Basin,* 734 P.2d at 635. Thus the holder of a conditional water right holds a vested right to obtain an absolute water right subject to completion of the appropriation with reasonable diligence.

By adding subsection (11) to section 37–92–305, the 1985 amendments specified that nontributary ground waters would no longer be administered under the doctrine of prior appropriation. Subsection 37–92–305(11) removed the reasonable diligence requirement associated with prior appropriation, and gave water courts the power to adjust withdrawal determinations based on local aquifer characteristics.

### A.

■ The water court's 1988 order modified its 1984 conditional decree to conform to subsection 37–92–305(11). Qualls argues that subsection 37–92–305(11) did not give the water court jurisdiction to alter its 1984 conditional water right decree. We disagree.

The language in the 1985 amendments, the strong public policy in favor of conserving and using beneficially nontributary ground water, and the legislature's plenary power over nontributary ground water, convince us that subsection 37–92–305(11) authorizes water courts to limit the exercise of conditional water right decrees entered before July 1, 1985, the effective date of the 1985 amendments, in furtherance of the purposes set forth in that subsection.[1]

---

1. We need not, and do not, decide in this case whether subsection 37–92–305(11) authorizes water courts to limit the exercise of absolute

water rights decrees entered prior to July 1, 1985.

Subsection 37–92–305(11) first provides that "[n]ontributary ground water shall not be administered in accordance with priority of appropriation." It then directs water courts not to enforce due diligence requirements contained in "determinations of rights to nontributary ground water" entered prior to July 1, 1985. This language demonstrates that the legislature intended to make the doctrine of prior appropriation inapplicable to conditional water right decrees entered prior to July 1, 1985, as well as those entered thereafter. This language in subsection 37–92–305(11) also demonstrates that the legislature intended the retained jurisdiction provision to apply to conditional decrees entered prior to July 1, 1985.

A contrary reading of subsection 37–92–305(11) would undermine the legislature's purpose in enacting the 1985 amendments. Unless the retained jurisdiction provision applies to conditional water right decrees entered prior to July 1, 1985, subsection 37–92–305(11) relieves conditional water right decree holders of the obligation to complete their appropriations with reasonable diligence, but does not empower the water court to control the determination of the quantity of annual withdrawal from aquifers administered under conditional water right decrees. Were we to interpret subsection 37–92–305(11) in Qualls' favor we would allow holders of conditional decrees entered prior to July 1, 1985, to apply water obtained by exercise of their water rights to any decreed use they desired in quantities up to the maximum decreed amount, and we would leave water courts with no power to protect the aquifer's water supply based on current information about aquifer characteristics. The legislature enacted the 1985 amendments to devote nontributary ground water to beneficial uses "in amounts based upon conservation of the resource and protection of vested water rights." § 37–90–102(2). To find in favor of Qualls we would have to read subsection 37–92–305(11) in a way that would undermine the legislative purpose of the 1985 amendments.

The water court's 1988 order did no more than apply subsection 37–92–305(11) to the water court's 1984 conditional water right decree. The legislature properly exercised its plenary power over nontributary ground water to authorize the application of subsection 37–92–305(11) to conditional water right decrees entered prior to July 1, 1985. The water court's 1988 order was authorized by a legislative enactment and was not outside of the water court's jurisdiction.

## B.

■ Qualls argues that the application of subsection 37–92–305(11) to its water right constitutes retrospective application of the law in violation of Colorado Constitution article II, section 11. Qualls argues that the water court's 1988 order made subsection 37–92–305(11) operate retrospectively. We disagree.

■ Article II, section 11, of the Colorado Constitution provides that: "No ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges, franchises or immunities, shall be passed by the general assembly." The constitutional prohibition against retrospective laws applies to acts which take away or impair vested rights acquired under existing laws, create new obligations, impose new duties, or attach new disabilities, in respect to transactions or considerations already past. *Continental Title Co. v. District Court*, 645 P.2d 1310, 1314 (Colo.1982); *see also Moore v. Chalmers–Galloway Live Stock Co.*, 90 Colo. 548, 554, 10 P.2d 950, 952 (1932). "Application of a statute is not rendered retroactive and unlawful merely because the facts upon which it operates occurred before adoption of the statute." *Continental Title*, 645 P.2d at 1314.

We confronted a claim somewhat similar to Qualls' claim in *P–W Investments, Inc. v. City of Westminster*, 655 P.2d 1365, 1371 (Colo.1982). In that case plaintiffs purchased water and sewer tap permits from defendant Westminster to assist in the plaintiffs' development of an apartment complex. *Id.* at 1368. Later, in response

to an overwhelming demand for water and sewer services, Westminster enacted an ordinance limiting the issuance of building permits in accordance with the availability of water and sewer services. *Id.* at 1369. Westminster refused to guarantee the availability of water and sewer services to plaintiffs, despite the fact that the plaintiffs possessed the water and sewer tap permits. *Id.* The plaintiffs argued that the Westminster ordinance operated retrospectively in violation of article II, section 11, of the Colorado Constitution. We rejected the plaintiffs' claim on the ground that the water and sewer tap permits did not grant to plaintiffs water and sewer services on demand in perpetuity. *Id.* at 1371. We noted that the ordinance authorizing Westminster to issue the permits prevented developers from receiving water and sewer services until Westminster had given further authorization based upon the developers' satisfaction of several additional conditions. *Id.* at 1371–72.

We held in *P–W Investments* that the Westminster ordinance did not operate retrospectively because the permits did not give the plaintiffs a "vested right or unconditional priority to water and sewer services free of the restrictions imposed by" the ordinance. *Id.* at 1372. A similar analysis applies here. When the legislature enacted the 1985 amendments to the Water Right Act, Qualls possessed only a conditional water right decree. Qualls' vested right in the water in the Arapahoe Aquifer was subject to Qualls' reasonably diligent appropriation of the water. Because Qualls did not possess an unconditional water right, subsection 37–92–305(11) operates as a reasonable limitation on the exercise of Qualls' conditional water right and does not operate retrospectively with respect to Qualls' 1984 conditional water right decree.

■ In addition, although the 1988 order applied subsection 37–92–305(11) to a water right which is the subject of a 1984 conditional water right decree, the order only applied subsection 37–92–305(11) to the water right prospectively. Subsection 37–92–305(11) only operates prospectively to authorize water courts to adjust annual withdrawal amounts. The legislature may exercise its plenary power over water matters to give water courts the power to make prospective adjustments in annual aquifer withdrawals based on the strong public interest in conserving nontributary ground water and applying that water to a beneficial use. In this regard the legislature's plenary power over nontributary ground water is analogous to a state's police power in zoning matters. *See Board of County Comm'rs of Boulder County v. Echternacht,* 194 Colo. 311, 315, 572 P.2d 143, 146 (1977); *Service Oil Co. v. Rhodus,* 179 Colo. 335, 347, 500 P.2d 807, 813 (1972) (zoning is a constitutional partial taking so long as it is reasonable).

### C.

■ Finally, Qualls argues that the 1988 order is barred by collateral estoppel. We disagree.

Qualls has no standing to assert collateral estoppel as a bar to the water court's order, because there is no indication in the record that any of the issues decided in issuing the 1984 decree are being relitigated. "Collateral estoppel bars *relitigation* of an issue determined at a prior proceeding...." *Salida School Dist. R–32–J v. Morrison,* 732 P.2d 1160, 1163 (Colo.1987) (emphasis added). Here the issue in the prior proceeding was the amount of water Qualls could withdraw annually from its well. The record does not establish that anyone has challenged that part of the 1984 decree which granted Qualls the conditional right to withdraw 275 acre-feet of water annually from the well, or that the water court is actively reconsidering that issue. The 1988 order merely states that the water court shall retain jurisdiction pursuant to subsection 37–92–305(11), thereby recognizing the right of the water court to impose reasonable limitations on the exercise of the decreed conditional water right. Whether the exercise of the conditional water right could be subjected to reasonable limitations was not at issue in the proceedings resulting in the 1984 decree.

We also reject Qualls' collateral estoppel argument because in the instant case we are confronted not with the relitigation of a finally determined issue, but with an exercise of plenary power by the legislature. The legislature amended section 37–92–305 and made the amendment applicable to existing conditional water right decrees. The doctrine of collateral estoppel does not apply in this case.

The order of the water court is affirmed.

ERICKSON, J., specially concurs.

Justice ERICKSON specially concurring:

I concur with the result reached by the majority. I have specially concurred to emphasize the limited statutory and constitutional issues that are before us in this appeal where the attorney general elected not to enter an appearance. This opinion addresses only section 37–92–305(11), 15 C.R.S. (1989 Supp.), and the appropriation of nontributary ground water that is not in a designated ground water basin. In my view, the water court had statutory authority to retain jurisdiction over the case pursuant to section 37–92–305(11). The water court did not, in my opinion, unconstitutionally impose a retrospective interpretation of the statute on Qualls because a final decree for a water right had not been entered. I also agree that collateral estoppel did not bar the water court from retaining jurisdiction.

Qualls applied for a permit to construct a well and on June 28, 1974, the state engineer issued the permit. The permit authorized Qualls to drill a well into the Arapahoe aquifer and to withdraw 275 acre-feet of water per year from that formation. The well was completed and on June 25, 1975, Qualls filed a statement of beneficial use of ground water with the Office of the State Engineer. Subsequently, Qualls filed an application for a replacement well permit which was granted by the state engineer on June 10, 1982. The replacement well permit also limited production from the well to 275 acre-feet per year from the Arapahoe aquifer. The replacement well was completed and Qualls filed a statement of beneficial use with the state engineer.

On December 10, 1983, Qualls filed an application for nontributary ground water that was not in a designated ground water basin and sought to perfect its right to the Arapahoe aquifer ground water covered by the 1982 replacement well permit.[1] A statement of opposition was filed and the matter was referred to the water referee for Water Division 1. The parties stipulated to proposed rulings and findings of the referee and the referee accepted the rulings and findings on November 27, 1984. The water court adopted the referee's rulings and findings as the decree of the water court on December 31, 1984. The decree provided that Qualls had a conditional water right in the amount of 275 acre-feet per year. The conditional water right was

---

1. Section 37–90–103(6)(a), 15 C.R.S. (1989 Supp.) provides:

"Designated ground water" means that ground water which in its natural course would not be available to and required for the fulfillment of decreed surface rights, or ground water in areas not adjacent to a continuously flowing natural stream wherein ground water withdrawals have constituted the principal water usage for at least fifteen years preceding the date of the first hearing on the proposed designation of the basin, and which in both cases is within the geographic boundaries of a designated ground water basin. "Designated ground water" shall not include any ground water within the Dawson–Arkose, Denver, Arapahoe or Laramie–Fox Hills formations located outside the boundaries of any designated ground water basin that was in existence on January 1, 1983.

The Colorado Ground Water Commission has jurisdiction to regulate the amount of annual withdrawal of designated ground water, unless the ground water is in a ground water management district. Sections 37–90–111, 37–90–130(2), 15 C.R.S. (1973 and 1989 Supp.). The board of directors of a ground water management district have the statutory authority to regulate the use of ground water within the district. Section 37–90–130(2).

Nontributary ground water is defined as "that ground water, located outside the boundaries of any designated ground water basins in existence on January 1, 1985, the withdrawal of which will not, within one hundred years, deplete the flow of a natural stream ... at an annual rate greater than one-tenth of one percent of the annual rate of withdrawal." Section 37–90–103(10.5), 15 C.R.S. (1989 Supp.).

continued until November, 1988 at which time Qualls would be required to make a showing of due diligence in putting the water to beneficial use or a showing that the conditional water right had been put to beneficial use and was absolute.

Effective July 1, 1985, the legislature amended the Ground Water Management Act, sections 37–90–101 to –142, 15 C.R.S. (1973 & 1989 Supp.), and set forth that nontributary ground water was not subject to the doctrine of prior appropriation. Section 37–90–102(2), 15 C.R.S. (1989 Supp.); *see also* section 37–92–305, 15 C.R.S. (1989 Supp.). In lieu of the prior appropriation doctrine, nontributary ground water resources "shall be allocated as provided in this article on the basis of ownership of the overlying land." Section 37–90–102(2). In keeping with a departure from the doctrine of prior appropriation, section 37–92–305(11), C.R.S. 15 (1989 Supp.) was added to the Water Right Determination and Administration Act, sections 37–92–101 to –602, 15 C.R.S. (1973 & 1989 Supp.). Section 37–92–305(11) provides that a decree for a nontributary ground water right need not include a date of initiation of the withdrawal project and that a holder of a conditional nontributary ground water right is relieved of any duty to make showings of diligence in completing the appropriation.[2]

On October 14, 1988, the water court entered an order, sua sponte, relieving Qualls of the duty to show due diligence. In addition, the order provided that the water court would retain jurisdiction pursuant to section 37–92–305(11). Qualls filed a motion to amend the order to strike the provision for retained jurisdiction on the part of the water court. The water court denied the motion to amend on February 8, 1989. Qualls appealed.

Qualls contends that the water court had no jurisdiction to add a retained jurisdiction provision to the conditional decree. Alternatively, Qualls asserts that adding a retained jurisdiction provision constitutes unlawful retrospective application of the provisions of Senate Bill 5, ch. 289, 1985 Colo. Sess. Laws, 1160–69,[3] that there is no "necessity" to retain jurisdiction pursuant to section 37–92–305(11), and that collateral estoppel bars redetermination of the amount of ground water that may be withdrawn annually from the well.

In my view, the retained jurisdiction provision is an acknowledgement on the part of the water court of the authority conferred upon it by the legislature to retain jurisdiction to adjust annual amounts of withdrawal of nontributary ground water which is not in a designated ground water basin or any ground water from the Dawson, Denver, Arapahoe, Laramie–Fox Hills or Dakota formations outside of a designated ground water basin as aquifer information becomes available. Sections 37–92–305(11), 37–90–137(4). The provision entered in the water court's order does not confer upon the water court any power that it did not already possess pursuant to section 37–92–305(11). Qualls does not contend that the retained jurisdiction provisions of section 35–92–305(11) are unconstitutional and questions only the water court's application of the statute. *See* section 37–82–101, 15 C.R.S. (1989 Supp.);[4]

---

2. Section 37–92–305(11) provides in part:
   Nontributary ground water shall not be administered in accordance with priority of appropriation, and determinations of rights to nontributary ground water need not include a date of initiation of the withdrawal project. Such determinations shall not require subsequent showings or findings of reasonable diligence, and such determinations entered prior to July 1, 1985, which require such showings or findings shall not be enforced to the extent of such diligence requirements on or after said date. The water judge shall retain jurisdiction as to determinations of ground water from wells described in section 37–90–137(4) as necessary to provide for the adjustment of the annual amount of withdrawal allowed to conform to actual local aquifer characteristics from adequate information obtained from well drilling or test holes.
   Section 37–90–137(4) applies to wells outside of a designated ground water basin that withdraw nontributary groundwater or any ground water from the Dawson, Denver, Arapahoe, Laramie–Fox Hills or Dakota aquifers.

3. Senate Bill 5 amended sections 37–90–102, 37–90–137, and 37–92–305 in 1985.

4. Section 37–82–101(1) provides in part that "[a]ll nontributary ground water shall be subject to such administration and use as the general assembly may provide by law."

*State v. Southwestern Colorado Water Conservation Dist.*, 671 P.2d 1294, 1316–18 (Colo.1983) (state has plenary authority over ground water; court does not reach issue of state's power over existing ground water users under section 37–90–137(4) of the Ground Water Management Act). In light of the legislative intent set forth in section 37–92–305(11), Qualls' argument that the water court lacked jurisdiction to add a retained jurisdiction provision to its 1988 order cancelling Qualls' diligence obligations is unfounded.

The Colorado Constitution, article II, section 11 provides that "[n]o ex post facto law, nor law impairing the obligations of contracts, or retrospective in its operation ... shall be passed by the general assembly." A law is retrospective in operation where it " 'takes away or impairs any vested right acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability in respect to transactions already past.' " *Continental Title Co. v. District Court*, 645 P.2d 1310, 1314 (Colo.1982) (quoting *Moore v. Chalmers–Galloway Live Stock Co.*, 90 Colo. 548, 10 P.2d 950 (1932)). However, the water right decreed in 1984 was a conditional right to nontributary ground water from the Arapahoe aquifer that was not in a designated ground water basin. Although a conditional water right has been termed vested, *Rocky Mountain Power Co. v. White River Elec. Assoc.*, 151 Colo. 45, 376 P.2d 158 (1962), it is vested in the sense that if the appropriator diligently puts the water to beneficial use, the appropriator is entitled to a water right to the extent, and in the amount, actually put to beneficial use with a priority date of the original conditional decree. Section 37–92–103(6), 15 C.R.S. (1973);[5] *Rocky Mountain Power Co. v. Colorado River Water Conservation Dist.*, 646 P.2d 383, 387 (Colo. 1982). In a conditional decree, the priority date and the maximum amount of water that can be appropriated are final; however, the amount of water to be finally decreed and the uses for that water are conditional. *See Waterman v. Hughes*, 33 Colo. 270, 275–76, 80 P. 891, 893 (1905). In light of the inchoate nature of a conditional water right, the water court may attach conditions to a conditional water right to ground water described in section 37–90–137(4) as authorized by the legislature pursuant to section 37–92–305(11) without violating the constitutional provisions against retrospective operation of the law.

Qualls asserts that a water court must make a finding of necessity in order to retain jurisdiction pursuant to section 37–92–305(11). However, section 37–92–305(11) does not indicate a legislative intent to require the water court to make such a finding as a condition precedent to retaining jurisdiction to adjust the annual amount of withdrawal of ground water from wells described in section 37–90–137(4). *See Schubert v. People*, 698 P.2d 788, 793 (Colo.1985) ("Legislative intent is the polestar of statutory construction.").

Finally, collateral estoppel does not bar the water court's exercise of continued jurisdiction pursuant to section 37–92–305(11) because of the nature of a conditional water decree. *See Dodo v. Fenno*, 172 Colo. 294, 472 P.2d 146 (1970) (merits of conditional water right open to dispute until right becomes absolute by reason of valid final decree). Collateral estoppel does not bar relitigation of an issue that has not been finally decided. *People v. Hearty*, 644 P.2d 302, 312 (Colo.1982). Since the actual amount of the conditional water right remains undecided until entry of a final decree, collateral estoppel does not prevent the water court's retention of jurisdiction pursuant to section 37–92–305(11) in this case.

I would affirm the order of the water court.

---

5. Section 37–92–103(6) defines a conditional water right as "a right to perfect a water right with a certain priority upon the completion with rea- sonable diligence of the appropriation upon which such water right is to be based."